[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT LINDA (CONWAY) SCOTT'S SUMMARY JUDGMENT MOTION DATED 1/25/90
This action arises out of an injury which occurred on October 9, 1986. At that time, the plaintiff Carole Kargul resided as a tenant in the Sandpiper Apartments located at 239 Nautilus Drive in New London, Connecticut. The defendant Linda Scott was also a tenant in the Sandpiper Apartments in an apartment located across the hall from the plaintiff. Lafate F. Ables had a history of repeated sexual assaults upon women, and a record of criminal convictions and incarceration. This history was known to the defendant Scott.
On October 9, 1986, plaintiff Carole Kargul was sexually assaulted by Lafate Ables. She was bound and forced into Scott and Ables' apartment, where she was raped and repeatedly stabbed. In an attempt to escape, Carole Kargul jumped from a third story balcony. As a result of this incident, plaintiff suffered severe personal injuries and losses.
Plaintiff brought an action seeking recovery for her injuries against three defendants: Sandpiper Dunes, Inc. Limited Partnership; Lafate F. Ables; and Linda (Conway) Scott. The third count of plaintiff's substitute complaint alleges a cause of action against Linda (Conway) Scott sounding in negligence. The complaint alleges three specific acts of negligence arising from the defendant's failure to warn at paragraph 13 as follows: CT Page 800
 13. The aforesaid injuries and losses were caused by the carelessness and negligence of the defendant, Linda Conway, in one or more of the following ways:
 a. in that she knew or should have known that the presence of the defendant Lafate F. Ables endangered other female tenants, including the plaintiff, Carole Kargul, yet she failed to warn the plaintiff of the same;
 b. in that she knew or should have known of the dangerous characteristics of the defendant, Lafate F. Ables, yet failed to warn the plaintiff of same; and/or
 c. in that she failed to disclose the dangerous characteristics and/or criminal record of the defendant, Lafate F. Ables, in applying for the aforesaid apartment, when, in the exercise of due care, she could and should have done so.
On January 25, 1990, the defendant Scott moved for summary judgment. Defendant Scott claims that there was no duty owed to the plaintiff; no proximate causation; and even if negligence existed, the actions of Ables constituted a superceding intervening cause.
Standard of Review
To prevail on a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue as to all of the material facts and that consequently he is entitled to judgment as a matter of law. See, e.g., Daily v. New Britain Machine Co., 200 Conn. 652,512 A.2d 893 (1986); Practice Book Section 384. A "material fact" is simply a fact which will make a difference in the result of the case. See, e.g., Lopez v. United Nurseries, Inc., 3 Conn. App. 602, 490 A.2d 1027 (Conn.App. 1985). "Once the moving party has produced some evidence in support of the motion for summary judgment the opposing party must present evidence that demonstrates the existence of some disputed relevant factual issue." Burns v. Hartford Hospital, 192 Conn. 451,455, 472 A.2d 1257, 1259 (1984).
In ruling on a motion for summary judgment, the function of the trial court is to determine whether there is a CT Page 801 genuine issue as to any material fact. The trial court does not decide that issue, however, until the parties are afforded a full hearing at trial. Where summary judgment is appropriate, it should be granted ". . . only where the evidence is such that no room for disbelief could exist in the minds of the jury and in circumstances which would require a directed verdict for the moving party." See, e.g., Yanow v. Teal Industries, Inc., 178 Conn. 262, 268-69, 422 A.2d 311, 315
(1979) (citations omitted).
FACTS
Plaintiff claims the following facts to be relevant:
Ms. Scott first met Lafate Ables in either 1982 or 1983. At that time, she was employed as director of the Middlesex County Sexual Assault Crisis Service. Her job entailed providing counseling and services for sexual assault victims and their significant others. Mr. Ables was incarcerated at the correctional facility in Somers, Connecticut, and was a participant in a program called the Mental Health Institution. The mental health program was a volunteer program at Somers prison for inmates who had committed sexual assaults on either adults or children. The defendant Scott became involved as a volunteer with the program at Somers. Mr. Ables was in the first group which defendant Scott became involved. During the time that defendant Scott participated as a group leader at Somers, she saw Mr. Ables on approximately 50 occasions over a year-and-three-month period. The defendant helped the inmates discuss their personal problems during the group meetings. Mr. Ables, when in the group setting, talked quite freely about the crimes he had committed.
It was through this initial professional association with the sexual assault treatment program that the defendant Scott learned of Mr. Ables' long history of violent sexual assaults. At the time that they first met, Ables had been convicted for three separate crimes. The first sexual assault occurred when he was approximately 15 or 16 years old. It involved a young girl who Ables had not known prior to the assault. The second offense occurred shortly after being released for serving time on the first assault. It involved kidnapping and the sexual assault of a woman nurse who he had not known prior to the incident. As a result of that incident, Ables was given a sentence of five to ten years. While incarcerated, he assaulted a corrections officer and served additional time.
At some point after the defendant severed her CT Page 802 association with the Somers volunteer treatment program, she and Mr. Ables became romantically involved. Upon his release from prison, Mr. Ables and the defendant began living together. During the time that the defendant and Ables lived together, they periodically discussed his prior acts of sexual assaults.
On April 11, 1986, several months after Mr. Ables was released from Somers and approximately six months prior to the incident complained of in the present case, he was arrested for sexual assault in the first degree of the defendant Scott's oldest daughter. As a result of a plea bargain, Ables served approximately 90 days in jail. This incident did not alter the living arrangement between the defendant and Ables. However, during the two-and-a-half month period prior to the incident involving the plaintiff, their relationship became strained. Additionally, the night before the incident, Mr. Ables was frustrated due to his work situation and began to communicate this frustration to the defendant.
I. THE DEFENDANT SCOTT'S CLAIM SHE OWED NO DUTY TO THE PLAINTIFF
The defendant makes the following argument in claiming that no duty was owed by her to the plaintiff:
"In order to sustain a cause of action for negligence, the Court must determine whether the actor owed a duty of care to the victim, that the duty was breached by the actor's failure to meet the standard of care, and that the breach was the proximate cause of the harm suffered by the victim. Coburn v. Lenox Homes, Inc., 186 Conn. 370, 377
(1984). Duty is a question of law and only if a duty is found to exist does the trier of fact then determine whether the defendant violated that duty. Shore v. Stonington, 187 Conn. 147,151-52 (1982). Where there is no duty, there can be no actionable negligence. The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. Anderson v. Churches Fried Chicken, Inc., 40 Conn. Sup. 343, 499 A.2d 908, citing Frankovitch v. Burton, 185 Conn. 14, 20-21 440 A.2d 254 (1981).
The Restatement is clear that in cases such as this one there is no actionable negligence since there is no duty running from the defendant-actor to the plaintiff-victim.
 There is no duty so to control the conduct of a third person to prevent him from causing physical harm to another unless: (a) a special relation exists between the actor and third person which imposes a CT Page 803 duty upon the actor to control the third person's conduct; or (b) a special relation exists between the actor and other which gives the other a right to protection.
Restatement 2d Torts, Section 315.
The types of relations that impose a duty because of the relation of the actor to the third person include that of parents, employers, and landowners. Id. at Sections 316-319. The types of relations that impose a duty because of the relation of the actor to the victim include that of a common carrier, innkeeper, and police or prisons. Id. at Section 314.
Obviously, this case does not fit into any of these situations. The defendant Scott did not have a special relationship with the assailant which placed a duty upon her to control his conduct. Nor was there a special relationship which placed a duty on the defendant Scott to protect the plaintiff Kargul from harm. Since there was no duty, as a matter of law, there can be no actionable negligence."
In claiming that there was a special relationship between the defendant and the assailant, the plaintiff makes the following argument.
"The facts indicate that the relationship between the defendant and the assailant was unique. The defendant Scott had special training and expertise in working with situations involving sexual assaults. She had insights into Ables' past crimes and his feelings concerning them due to both her professional background and her intimate relationship with him. She was aware that Mr. Ables was not, and had not been, undergoing any psychiatric treatment."
The Court agrees with the defendant that a "special relationship" between the defendant Scott and the assailant within the meaning of Restatement 2nd Torts, Section 315, does not exist in this case.
The general rule regarding the duty to act for the protection of others, as stated in Restatement 2nd Torts, Section 314, is as follows:
 The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.
CT Page 804
Section 314A of the Restatement of Torts addresses the special relations that give rise to a duty to aid or protect as follows:
 Section 314A. Special Relations Giving Rise to Duty to Aid or Protect
 (1) A common carrier is under a duty to its passengers to take reasonable action.
 (2) An innkeeper is under a similar duty to his guests.
 (3) A possessor land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
 (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.
The relationship between the defendant Scott and the assailant does not fall into any of the special relations stated in Section 314A.
The duty to control the conduct of third persons is generally stated in Restatement 2nd Torts, Section 315 as follows:
Section 315. General Principle
 There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
 (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
 (b) a special relation exists between the actor and the other which gives to the other a right to protection.
 Comment: a. The rule stated in this section is a special application of the general rule stated in Section 314.
CT Page 805
The relations between the actor and the other which require the actor to control the conduct of third persons for protection of the other are stated in Sections 314A and 320. Section 320 has to do with the duty of a person having custody of another to control the conduct of third persons. The special relations giving rise to a duty to aid or protect of Section 314A were previously stated. The caveat to Section 314A is as follows:
 The Institute expresses no opinion as to whether there may not be other relations which impose a similar duty.
The relations between the actor (the defendant) and a third person (the assailant) which require the actor to control the third person's conduct are stated in Restatement 2nd Torts, Sections 316-319.
Section 316 has to do with the duty of a parent to control the conduct of a child. Section 317 has to do with the duty of a master to control the conduct of a servant. Section 318 has to do with the duty of the possessor of land or chattels to control conduct of a licensee. Section 319 has to do with the duty of those in charge of persons having dangerous propensities.
Since a trial court may grant the motion for summary judgment only when there is no genuine issue of material facts remaining between the parties and the moving party is entitled to judgment as a matter of law, the issue is whether as a matter of law based on the facts of this case, the defendant Scott is entitled to judgment on the grounds that she did not owe a duty to the plaintiff.
The Court holds that such a duty was owed.
The distinction between liability based on Restatement 2nd Torts, Section 344, and liability based on Section 448 is meaningful.
Section 344 provides as follows:
 Section 344. Business Premises Open to Public: Acts of Third Persons or Animals.
 A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon CT Page 806 the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
 (a) discover that such acts are being done or are likely to be done, or
 (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
Section 448, on the other hand, provides as follows:
 Section 448. Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence.
 The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.
Footnote C to Section 448 provides as follows:
 c. When actor's negligence consists in creating risk of criminal action by third person. The actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability (see Sec. 449). However, it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to commit the crime. It CT Page 807 is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission.
 This is true although the likelihood that such a crime would be committed might not be of itself enough to make the actor's conduct negligent, and the negligent character of the act arises from the fact that it involves other risks which of themselves are enough to make it unreasonable, or from such risks together with the possibility of crime.
The liability imposed under Section 344 is to a possessor of land who holds it open to the public for entry for his business purposes. On the other hand, Section 448 is not limited to landowners who hold their premises open for business purposes, but rather applies to any negligent tortfeasor. Further, Section 449 of Restatement 2nd Torts provides as follows:
 Section 449. Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent.
 If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.
Comment:
 a. This Section should be read together with Sec. 302B, and the Comments to that Section, which deal with the foreseeable likelihood of the intentional or even criminal misconduct of a third person as a hazard which makes the actor's conduct negligent. As is there stated, the mere possibility or even likelihood that there may be such misconduct is not in all cases sufficient to characterize the actor's conduct as negligence. It is only where the actor is under a duty to the other, because of some relation between CT Page 808 them, to protect him against such misconduct, or where the actor has undertaken the obligation of doing so, or his conduct has created or increased the risk of harm through the misconduct that he becomes negligent. (emphasis provided)
In addition, Section 302B Restatement 2nd Torts provides as follows:
 An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.
In order to determine whether any duty exists in this case on the part of the defendant Scott to warn the plaintiff of the dangerous propensities of the assailant, it is necessary to first trace the basis upon which liability has been imposed on landlords for conduct of third parties. In recent years, a number of decisions have gone beyond Restatement 2nd Torts, Sections 314A and 318, in imposing liability on landlords for failure to use reasonable care to protect invitees or tenants from criminal acts of other invitees, or of trespassers. See Law of Torts, 2nd Ed., Harper, James, Jr., and Gray, Section 18.7, note 12. To the same effect, the rule as stated in Prosser and Keeton on Torts, 5th Edition, Hornbook Series, Lawyer's Edition, Chapter 10, Section 63, is as follows:
 Prior to 1970, there was no general tort duty on landlords to protect their tenants from criminal theft or attack. The situation began to change in that year, however, with the landmark decision in Kline v. 1500 Massachusetts Avenue Apartment Corp., 439 F.2d 477 (D.C. Cir. 1970), which imposed a duty of reasonable care upon the owner of an urban multiple unit apartment dwelling to protect its tenants from foreseeable criminal assaults. A growing number of courts have imposed similar duties of reasonable protection upon landlords to protect their tenants, and to protect others perhaps as well, from criminal attack, provided that such assaults are reasonably foreseeable CT Page 809 and predictable.
The Kline court, referred to by Prosser and Keeton, stated in part as follows:
 As a general rule, a private person does not have a duty to protect another from a criminal attack by a third person. We recognize that this rule has sometimes in the past been applied in landlord-tenant law, even by this court. Among the reasons for the application of this rule to landlords are: "judicial reluctance to tamper with the traditional common law concept of the landlord-tenant relationship; the notion that the act of a third person in committing an intentional tort or crime is a superseding cause of the harm to another resulting therefrom; the oftentimes difficult problem of determining foreseeability of criminal acts; the vagueness of the standard which the landlord must meet; the economic consequences of the imposition of the duty; and conflict with the public policy allocating the duty of protecting citizens from criminal acts to the government rather than the private sector.
 But the rationale of this very broad general rule falters when it is applied to the conditions of modern day urban apartment living, particularly in the circumstances of this case. The rationale of the general rule exonerating a third party from any duty to protect another from a criminal attack has no applicability to the landlord-tenant relationship in multiple dwelling houses. The landlord is no insurer of his tenants' safety, but he certainly is no bystander. And where, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises exclusively within his control, has every reason to expect like crimes to happen again, and has the exclusive power to take preventive action, it does not seem unfair to place upon the landlord a duty to take CT Page 810 those steps which are within his power to minimize the predictable risk to his tenants.
 In the case at bar we place the duty of taking protective measures guarding the entire premises and the areas peculiarly under the landlord's control against the perpetration of criminal acts upon the landlord, the party to the lease contract who has the effective capacity to perform these necessary acts.
 In all, the theory of liability is essentially the same: that since the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated. (emphasis provided)
In Kendall v. Gore Properties, 236 F.2d 673 (1957), in holding that where the defendant landlord hired a stranger, without any investigation whatsoever as to qualifications or character, to do painting in an apartment building, and gave the stranger access to the apartment of a tenant, who was later strangled by the employee in her apartment, that the landlord breached its duty to the tenant, the Kendall court stated in part as follows:
 We have heretofore made clear as to apartment houses, the reasons which underlie the landlord's duty under modern conditions and which, as to various hazards, call for at least "reasonable or ordinary care, which means reasonably safe conduct, but there is no sufficient reason for requiring less." True, the landlord does not become a guarantor of the safety of his tenant. But, if he knows, or in the exercise of ordinary care ought to know, of a possibly dangerous situation and fails to take such steps as an ordinarily prudent person, in view of existing circumstances, would have exercised to avoid injury to his tenant, he may be CT Page 811 liable. So if he negligently takes such steps as he did take, he may be liable. "The landlord was . . . under a duty not to create an unsafe condition in the premises either permanent or temporary by any affirmative action on his part."
 Certainly, such circumstances were not open to her observation, and she clearly had a right to assume that the landlord neither would create a risk nor expose her to possible danger through his introduction into her apartment of the man Porter. (emphasis provided)
In Duarte v. State, 148 Cal.Rptr. 804, 84 Cal.App.3d 705
(1978), the court stated in part as follows:
 In yet another area the courts, by the process of analogy to the innkeeper's liabilities (after cleaning away much legal underbrush), have held the landlord-tenant relationship in the urban, multiple residential dwelling context, gives rise to liability under circumstances where landlords have failed to take reasonable steps to protect tenants from criminal activity. (O'Hara v. Western Seven Trees Corp., 75 Cal.App.3d 798, 802-803, 142 Cal. Rptr, 487; Totten v. More Oakland Residential Housing, Inc., 63 Cal.App.3d 538, 543, 134 Cal.Rptr. 29; and see Kline v. 1500 Massachusetts Avenue Corp., 141 U.S. App. D.C. 370, 439 F.2d 477; Samson v. Saginaw Professional Bldg., Inc., 393 Mich. 393, 224 N.W.2d 843; Johnston v. Harris, 387 Mich. 569, 198 N.W.2d 409; see Annot. 43 A.L.R.3d 331.)
 Following the Kline reasoning imposing liability on a negligence base are the following cases: Smith v. General Apartment Co., 133 Ga. App. 927, 213 S.E.2d 74; Sherman v. Concourse Realty Corp. 47 App.Div.2d 134, 365 N.Y.S.2d 239; Smith v. ABC Realty Co. 66 Misc.2d 276, 322 N.Y.S.2d 207; Kendall v. Gore Properties, 98 U.S. App. D.C. 378, 236 F.2d 673; Goldberg v. Housing Authority of Newark, 38 N.J. 578, 186 A.2d 291, 293; CT Page 812 Braitman v. Overlook Terrace Corp., 68 N.J. 368, 346 A.2d 76; Stribling v. Chicago Housing Authority, 34 Ill. App.3d 551, 340 N.E.2d 47; see Annot. 43 A.L.R.3d 348-350; see also Rest.2d Torts, Sec. 302B, 448, 449.
In Braitman v. Overlook Terrace Corp., 346 A.2d 76
(1975), in holding a landlord liable to a residential tenant for loss occasioned by theft on the basis of the landlord's failure to supply adequate locks on the door to the plaintiffs' premises, the court relied on 2 Harper and James, the Law of Torts (1956), Section 20.5 at 1144-45, and Restatement of Torts 2d, Section 302B, and Comment C from Section 448 of the Restatement, Torts 2d.
In O'Hara v. Western Seven Trees Corp. Intercost,142 Cal.Rptr. 487, 75 Cal.App.3d 798 (1978), the tenant brought suit against the owners and operators of an apartment complex where the tenant resided alleging that the defendants were negligent in failing to provide adequate security, in misrepresenting the security devices in effect on the premises, and in concealing information concerning a man who had raped several female tenants. The O'Hara court stated in part as follows:
 If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, . . . or criminal does not prevent the actor from being liable for harm caused thereby. (Sec. 449) The risk of sexual assault by appellant's attacker was the hazard which made respondents' conduct negligent.
In Kwaitkowski v. Superior Trading Co.,176 Cal.Rptr. 494, 123 Cal.App.3d 326 (1981), suit was brought by a former tenant against the landlord for injuries sustained when she was raped, assaulted and robbed in the dimly-lit lobby of a building with a defective front door in a high crime area after the landlords had notice of similar and other crimes committed on another tenant in a common hallway. In holding that the landlord could be liable in this factual allegation, the Kwaitkowski court stated in part as follows:
 However, the landlords did nothing to repair the front entrance door, which did not lock properly; in addition, the CT Page 813 landlords failed to properly maintain adequate lighting in the common entrance lobby.
 The landlords here argue that O'Hara is extreme and factually distinguishable as the O'Hara landlord was aware of prior incidents of rape by a particular suspect, and had composite drawings of the suspect as well as a general description of his modus operandi.
 The landlords further argue that their demurrer was properly sustained because, unlike O'Hara, supra, they had no knowledge of a particular assailant and, therefore, they had "insufficient knowledge to create a duty to defend" against the particular risk of sexual assault by a stranger.
 The landlords' contention overlooks the fact they had prior notice of a tenant who was assaulted and robbed two months before Ms. Kwaitkowski was assaulted, robbed and raped. The landlords had notice that their apartment building was in a high crime area and that the lock of the lobby entrance door was defective. They also had notice that with the defective door, strangers had easy access to the premises and that the tenants were in fear of their personal safety.
 Finally, the landlords cite 7735 Hollywood Blvd. Venture v. Superior Court, 116 Cal.App.3d 901, 172 Cal.Rptr. 528.
 The instant case involves a defective lock on the lobby door that provided easy access to strangers. As the court noted in Hollywood, the utility of a light outside the door was questionable. Here, a properly functioning front door lock is a vital first line of defense.
In Frances T. v. Village Green Owners Assn.,723 P.2d 573, 42 Cal.3d 490, 229 Cal.Rptr. 456 (1986), the court held that a condominium association and its individual directors owed plaintiff the same duty of care as would a landlord in the traditional landlord-tenant relationship and CT Page 814 stated in part as follows:
 But regardless of these self-imposed constraints, the Association is, for all practical purposes, the Project's "landlord." And traditional tort principles impose on landlords, no less than on homeowner associations that function as a landlord in maintaining the common areas of a large condominium complex, a duty to exercise due care for the residents' safety in those areas under their control. (See, e.g., Kwaitkowski v. Superior Trading Co. (1981) 123 Cal.App.3d 324, 328, 176 Cal.Rptr. 494; O'Hara v. Western Seven Trees Corp., supra, 75 Cal.App.3d 798, 802-803, 142 Cal. Rptr, 487; Kline v. 1500 Massachusetts Avenue Apartment Corp. (D.C. Cir. 1970) 439 F.2d 477, 480-481; Scott v. Watson (1976) 278 Md. 160, 359 A.2d 548, 552).
 Since there are no reported California cases dealing with the liability of a condominium association in a situation such as this, the parties have analogized this case to four landlord-tenant cases involving similar facts. The reasoning employed by this line of landlord-tenant cases is equally applicable here.
The Frances T. court went on to cite with approval from Restatement 2d Tort, Sections 448 and 449.
Finally, in Anaya v. Turk, 199 Cal.Rptr. 187,151 Cal.App.3d 1092 (1984), the issue was what duty a tenant had to protect another person from a criminal attack by a third person who was a social guest in the defendant tenant Turk's apartment. The Anaya court stated at page 191 in part as follows:
 An apartment dweller cannot be held to have a duty to protect friends and acquaintances from the violent criminal conduct of others on the premises unless he has reasonable cause to anticipate such conduct. Mere knowledge that Wilson had been in federal prison did not constitute reasonable cause to anticipate his violent conduct. (emphasis provided)
CT Page 815
The common thread that weaves through all of the above cases is that of control. Whether the duty was imposed upon the landlord or upon the condominium association, there was a duty imposed as the result of the ability to control, whether the control was over the common area, or whether the control was over the person to be hired by the landlord and thereby have access to the tenant's apartment, or whether the control was over the type of locks installed on the tenant's apartment. The tenant, in each case, had a right to have the landlord secure the front entrance to the apartment building, provide adequate security for the entrance to the tenant's apartment, and not create a risk of exposing the tenant to additional danger by making her apartment accessible to a dangerous person. This duty arises in part as a result of the nature of the dependence that the tenant has on the landlord for the protection of the tenant. Tenants also have a mutual dependence upon each other for each tenant not to allow a known dangerous person to have free access to the apartment building where each tenant resides. Securing of common areas and of front entrances and of apartment locks by the landlord will not provide adequate protection to tenants if another tenant is allowed to bring into the apartment building the very type of person for whom the landlord is responsible to keep out by installing the protective devices. A tenant is just as much at risk by the landlord hiring a dangerous person as by another tenant allowing that same dangerous person to have access to the apartment building. In each instance, a duty to warn is needed for the mutual protection of all tenants.
The ability of the plaintiff to provide for her own protection is limited to the control which the defendant has over her apartment. A duty is therefore imposed upon the one possessing control and thus the power to act to take reasonable precautions to protect the other from assaults by third parties which could reasonably have been anticipated. Each tenant is under a duty to each other tenant not to create an unsafe condition in the premises by an affirmative act on the part of such tenant.
What was said in Duarte v. State, 148 Cal.Rptr. 804, 808 (1978), applies to this case:
 As was said in Dillon v. Legg, 68 Cal.2d 728, 734, 69 Cal.Rptr. 72, 76, 441 P.2d 912, 916:
 "The assertion that liability must . . . be denied because defendant bears no `duty' to plaintiff `begs the essential CT Page 816 question — whether the plaintiff's interests are entitled to legal protection against the defendant's conduct . . . . (Duty) is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (3d ed. 1964) at pp. 332-333.)"
This plaintiff was entitled to legal protection against the defendant Scott's failure to warn conduct.
In this case, the defendant Scott, by her act of allowing the defendant Ables to reside with her in the same apartment building in which the plaintiff resided, increased the risk of harm occurring to the plaintiff. Allowing the defendant Ables to reside with her created an opportunity for him to commit the tort or crime against the plaintiff. The facts of the case are such that a jury could find that the conduct of the defendant Scott was such that she realized or should have realized the likelihood that the situation might be created that the defendant Ables would afford himself of the opportunity to commit a tort or crime against another female tenant of the apartment building.
II. THE DEFENDANT LINDA SCOTT'S CLAIM THAT HER CONDUCT WAS NOT THE PROXIMATE CAUSE OF THE PLAINTIFF'S INJURY
Citing Doe v. Manheimer, 212 Conn. 748 (1989), the defendant argues that her conduct was not the proximate cause of the action of the defendant Ables. The Court is not persuaded by that argument. The Doe v. Manheimer court stated in part as follows:
 To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct "legally caused" the injuries. Wu v. Fairfield, 204 Conn. 435, 438, 528 A.2d 364 (1987); Hearl v. Waterbury YMCA, 187 Conn. 1, 4, 444 A.2d 211 (1982); W. Prosser W. Keeton, Torts (5th Ed.) Sec. 41, p. 263. As we observed in Kowal v. Hofher, 181 Conn. 355, 359, 436 A.2d 1 (1980), "(l)egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation." The first component of "legal cause" is "causation CT Page 817 in fact." "`Causation in fact' is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." Id.
 The second component of "legal cause" is proximate cause, which we have defined as "`(a)n actual cause that is a substantial factor in the resulting harm. . . .' Coburn v. Lenox Homes, Inc., 186 Conn. 370, 383, 441 A.2d 629 (1982)." Boehm v. Kish 201 Conn. 385, 391, 517 A.2d 624 (1986). The "proximate cause" requirement tempers the "expansive view of causation (in fact) . . . by the pragmatic . . . shaping (of) rules which are feasible to administer, and yield a workable degree of certainty. 2 Harper James, Torts Sec. 20.4, p. 1133. Remote or trivial (actual) causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes." Kowal v. Hofher, supra, 359-60. "In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice. See generally, Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 352, 354-56, 162 N.E. 99 (1928) (Andrews, J., dissenting)." Boehm v. Kish, supra, 391-92.
 This court has often stated that the "test" of proximate cause is whether the defendant's conduct is a "substantial factor" in producing the plaintiff's injury. Wu v. Fairfield, supra, 438. Boehm v. Kish, supra; Tetro v. Stratford, supra; see also Ferndale Dairy, Inc. v. Geiger, 167 Conn. 533, 538, 356 A.2d 91 (1975) (defining "substantial factor" as one which "must have continued down to the moment of the damage or, at least, down to the setting in motion of the final active injurious force which immediately produced CT Page 818 or preceded the damage"); but see W. Prosser W. Keeton, supra, p. 278. That negligent conduct is a "cause in fact," however, obviously does not mean that it is also a "substantial factor" for the purposes of a proximate cause inquiry. The "substantial factor" test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, "`whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.' Merhi v. Becker, 164 Conn. 516, 521, 325 A.2d 270 (1973); see Palsgraf v. Long Island R.R. Co., supra, 354." Coburn v. Lenox Homes, Inc., supra, 384. In applying this test, we look "from the injury to the negligent act complained of for the necessary causal connection. Collins v. City National Bank Trust Co., 131 Conn. 167, 171, 38 A.2d 582 (1944).'" Peterson v. Oxford, 189 Conn. 740, 749, 459 A.2d 100 (1983).
 Moreover, in the present case, there was no evidence tending to demonstrate that the defendant had had any past experience that might reasonably have led him to perceive and act on the atypical association between "natural shields" such as overgrown vegetation and violent criminal activity.
This case differs from Doe v. Manheimer in a number of respects. First, it is reasonable for a person such as the defendant Scott, with her knowledge of the violent propensity of the defendant Ables to commit sexual assault crimes, to commit such a crime if allowed to occupy an apartment with her. Secondly, the defendant Scott, based on her past experience with the defendant Ables and his more recent actions in committing an assault upon the daughter of the defendant Scott, had reason to believe that allowing the defendant Ables to reside with her would create a risk to other female tenants in the apartment building. The Court therefore concludes that there is a question of fact as to whether the conduct of the defendant Scott was the substantial factor in the resulting harm to the plaintiff and was within the scope of the risk created by the defendant Scott's conduct.
III. THE DEFENDANT SCOTT'S CLAIM THAT THE CT Page 819 CRIMINAL ACT OF THE DEFENDANT ABLES WAS AN INTERVENING ACT BREAKING THE CHAIN OF CAUSATION
The Court is not persuaded by that argument.
In discussing an intervening act breaking the chain of causation, the Doe court stated as follows:
 The "scope of the risk" analysis of "proximate cause" similarly applies where, as here, the risk of harm created by the defendant's negligence allegedly extends to an intervening criminal act by a third party. See Tetro v. Stratford, supra, 605; Coburn v. Lenox Homes, Inc., supra. "We have consistently adhered to the standard of 2 Restatement (Second) Torts Sec. 442B (1965), that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person and is not within the scope of the risk created by the defendant's conduct. Kiniry v. Danbury Hospital, 183 Conn. 448, 455, 439 A.2d 408
(1981); Merhi v. Becker, supra, 522; Miranti v. Brookside Shopping Center, Inc., 159 Conn. 24, 28, 266 A.2d 370
(1969)." (emphasis added) Tetro v. Stratford, supra. "The reason (for the general rule precluding liability where the intervening act is intentional or criminal) is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." 2 Restatement (Second), Torts Sec. 442B, comment c. "Such tortious or criminal acts may in themselves be foreseeable, (however), and so within the scope of the created risk. . . ." Id.; see also 2 Restatement (Second), Torts Secs. 448 and 449.
 The Restatement (Second) of Torts, Sec. 448 provides: "The act of a third person in committing an intentional tort CT Page 820 or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." Section 449 provides: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."
 First, it is clear that Sec. 442B contemplates reasonably foreseeable intervening misconduct, rather than all conduct that actually proceeds from a situation created by the defendant.
In this case, the jury could find that the defendant Scott's conduct created or increased a risk of a particular harm to the plaintiff and was a substantial factor in causing that harm. Further, the fact that the harm was intentionally caused by the defendant Ables would not relieve the defendant Scott from liability where the harm was within the scope of the risk created by the defendant Scott's conduct. Finally, the conduct of the assailant Ables was reasonably foreseeable by the defendant Scott in view of her knowledge of the prior acts of sexual assault by Ables and her knowledge that several months after Ables was released from Somers, which was approximately six months prior to the incident complained of in this case, Ables was arrested for sexually assaulting the defendant Scott's oldest daughter, for which he served approximately sixty days in jail.
The Court therefore concludes that the criminal act of the defendant Ables was not necessarily an intervening act breaking the chain of causation.
ORDER
The motion for summary judgment is denied. CT Page 821
AXELROD, J.