GLORIA B. SULLIVAN, administratrix, *vs.* HARRY A.
HAMACHER.

Middlesex.    October 8, 1958. — May 14, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Landlord and Tenant,* Lights, Common hallway, Landlord's liability to
tenant or one having his rights. *Negligence,* Contributory. *Proximate
Cause.*

A conclusion that there was a breach of the duty of the owner of an
apartment building to a tenant of a second floor apartment therein was
justified by evidence warranting findings that when the tenancy began
the hallways on that floor, which had no windows, were lighted by an
electric light in the control of the owner, that in walking between the
apartment and a bathroom on that floor the tenant would have to pass
the top of a steep rear stairway, that the bulb in the electric light
burned out and was not replaced despite complaints to the owner and
his agent, and that three months after it burned out, on an evening
when the hallways were thereby "pitch black," the tenant fell down
the rear stairway and was killed. [193]
Evidence did not require a finding of contributory negligence on the part
of a tenant of a second floor apartment in an apartment building who,
on an evening when the hallways on that floor were "pitch black" be-
cause the bulb in the electric light in the hallways had burned out,
fell down a steep rear stairway whose top she would have to pass in
walking between her apartment and a bathroom. [193–194]
A finding was warranted on the evidence that a failure of the owner of an
apartment building to replace a burned out electric light bulb in the
hallways of the second floor of the building, whereby the hallways were
"pitch black" after dark, was a proximate cause of a tenant's falling
down a steep rear stairway whose top she would have to pass in walking
between her apartment and a bathroom on that floor. [194–195]

TORT. Writ in the Superior Court dated May 5, 1954.

The action was tried before *Swift,* J.

*Bertram A. Sugarman,* (*Edward J. Barshak* with him,) for
the defendant.

*Thomas E. Cargill, Jr.,* for the plaintiff.

COUNIHAN, J. This is an action of tort to recover dam-
ages for the death of the plaintiff's intestate, Gertrude V.
Corbett, allegedly caused by a fall on February 7, 1954,

due to the failure of the defendant to provide suitable lighting in a hallway on the second floor of a building owned by the defendant on Florence Street in Malden.[1]  The action was tried before a jury who returned a verdict for the plaintiff.  It comes here upon an exception of the defendant to the denial of his motion for a directed verdict.  There was no error.

There was evidence that the deceased, a woman about sixty-five years old, was a tenant on the second floor of this building.  She lived alone.  There were three other tenements on that floor.  At the time the tenancy of the deceased began the only source of light in the hallways on that floor was an electric light fixture in the ceiling to the left of an extension of the main hallway.  Electricity for this fixture was on the defendant's meter.  This fixture was in the control of the defendant and it was lighted twenty-four hours a day until a period beginning about three months before the day of the accident when the bulb burned out.  There were no windows in either of the hallways so that it was dark there during the daytime and pitch black after darkness set in.  The bulb had not been replaced at the time of the deceased's fall despite many complaints by the tenants to the defendant and his agent.

The last person to see the deceased alive was an occupant of an adjoining tenement.  At about 6:30 P.M. on February 7, 1954, she heard the noise of someone approaching, and upon opening the door she saw the deceased at the top of the front stairway.  After an exchange of greetings the deceased said, "I've got to go to the bathroom.  My goodness, but it's dark in here.  When are they ever going to do anything about the light?"  The neighbor heard the deceased walk to her own door and insert her key.

At about 7:30 A.M. on Monday, February 8, the body of the deceased was found at the bottom of the rear stairway which led from the hallway nearly opposite the front stairway.  The rear stairway was an old fashioned one about

---

[1] A count for conscious suffering was waived.

three and one half feet wide and very steep. It led to the back yard where there were rubbish barrels and the tenants used it to go down and deposit rubbish in those barrels.

When the body was found the deceased was dead apparently as the result of a fractured skull. The body was fully clothed except for shoes. Her outer garment was a dress of dark blue material and it was not a house dress. There was a tear about two inches in length in her skirt at the level of her hip. Pieces of cloth of the same material were found caught on one of the screws which fastened a barrier, hereinafter described, to the top of the stairs. At the level of the hallway, there was a wooden arm which served as a barrier. The arm was screwed into a swivel on the left side of the top of the stairway as one looked at it from the door to the deceased's tenement. This arm could be raised or lowered. When it was down it rested in a slot on the right side of the top of the stairs and formed a barrier to the use of the stairs. When using this rear stairway the tenants lifted the arm to an upright position and when they finished they would replace it down into the slot.

In the brief of the defendant there is a drawing of the hallway and its extension in which the bathroom of the deceased was located. This drawing corresponds with the description of the area as it appears in the record and the photographs of it which were before us. It shows the entrance to the tenement of the deceased to be located nearly opposite the top of the rear stairway and about six feet diagonally away from it. About six inches from the left side of the top of the stairs an extension of the main hallway runs off it at a right angle. Thus in going to or returning from the bathroom the deceased would have to pass the top of the rear stairs.

A police officer who arrived on the scene at about 7:45 A.M. observed the condition of the tenement of the deceased. The lights in it were on and the shades were drawn. Her shoes had been "kicked off"; two unopened Sunday newspapers were there; and her outer coat, hat and purse had been "just dropped" on a piece of furniture. The gas stove in

the kitchen was burning and food containers were on the kitchen table.

In considering the denial of the motion of the defendant for a directed verdict, we need consider only evidence favorable to the plaintiff. *Donnelly* v. *Larkin,* 327 Mass. 287, 289. We have also said, "'The plaintiff must recover, if at all, on the familiar principle that, in the absence, as here, of express agreement, a landlord owes a duty — breach of which would constitute negligence — to a tenant . . . to exercise reasonable care to keep the part of the premises remaining in the control of the landlord in the condition with respect to safety in which they were, or to a person of ordinary observation would appear to be, at the time of the letting.' . . . This rule is applicable to lighting." *Donnelly* v. *Larkin, supra,* at page 290, and cases cited. We are of opinion that there was ample evidence of the implied obligation on the part of the landlord to maintain the light in the hallways described herein. The light was on when the tenancy of the deceased began, and it was necessary to maintain a light for there were no windows in the hallways so that without artificial light they were dark in the daytime and pitch black after dark. It may be important to note that the light was in the control of the defendant and that the electricity used for this light was measured on the meter of the defendant. He did nothing to remedy the situation during the three months' period after the light bulb burned out although his attention was directed to it. The negligence of the defendant was plainly a matter for the determination of the jury.

The defendant argues that the deceased was guilty of contributory negligence, but under G. L. c. 231, § 85, as amended through St. 1952, c. 533, § 1, this is a matter of affirmative defence to be proved by the defendant and determined by the jury. This is not a case for applying the groping in the dark decisions. *Sodekson* v. *Lynch,* 314 Mass. 161, 166. *McAvey* v. *Albany Realty Co.* 328 Mass. 310, 313. The deceased was not unfamiliar with the condi-

tions in the hallway but "[m]ere knowledge that some danger exists is not conclusive of the negligence of one who fails to avoid it." *Barnes* v. *Berkshire St. Ry.* 281 Mass. 47, 50.

The deceased according to the conversation with her neighbor and the condition of her apartment was in need to use the bathroom. There was no other means of access to it than to go through the hallways. These circumstances together with the darkened hallway and the proximity of the extension of the hallway to the top of the rear stairway warranted the conclusion of the jury that she fell going to or returning from the bathroom, and that she was in the exercise of due care. *Donnelly* v. *Larkin,* 327 Mass. 287, 293.

The defendant earnestly argues that there was no evidence of any causal connection between the failure of the defendant to maintain a light in the hallway and the fall of the deceased which brought about her death. It is true that from the mere coexistence of negligence and injury the jury cannot be permitted to speculate as to a causal relationship. But the burden of proof that is on the plaintiff in this case does not require her to establish beyond all doubt or a reasonable doubt that there was a causal connection between the failure to maintain lighting and the fall of the deceased. "The weight or ponderance of evidence is its power to convince the tribunal which has the determination of the fact [in the instant case, the jury], of the actual truth of the proposition to be proved. After the evidence has been weighed, that proposition is proved by a preponderance of the evidence if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the . . . minds of the tribunal notwithstanding any doubts that may still linger there." *Sargent* v. *Massachusetts Acc. Co.* 307 Mass. 246, 250. See *Conroy* v. *Maxwell,* 248 Mass. 92.

Upon the evidence, in our opinion, the jury could warrantably find that the deceased met her death by reason of the negligence of the defendant in failing to maintain the light

in the hallway rather than that her death was caused in any manner suggested by the defendant. At any rate we are satisfied that it was a question for the jury and that it was properly left to them for their determination. *Wartik* v. *Miller*, 48 Ohio App. 494, 498.

The defendant has brought to our attention two cases from other jurisdictions, *Glancy* v. *McKees Rocks Borough*, 243 Pa. 216, and *Wolf* v. *Kaufmann*, 227 App. Div. (N.Y.) 281. The facts in the first case are clearly distinguishable. Somewhat more appears in this case to show the circumstances as to the accident than appeared in the New York case. If anything contrary to what we have said appears in the New York case we are not disposed to follow it.

*Exceptions overruled.*