MARY HALL, ADMINISTRATRIX (ESTATE OF JESSE HALL) *v.* DOROTHY WINFREY
(10246)

DUPONT, C. J., LANDAU and FREEDMAN, Js.

Argued January 9—decision released March 24, 1992

*Robert M. LaRose,* for the appellant (defendant).

*Richard L. Jacobs,* with whom was *Michael B. Carlson,* law student intern, for the appellee (plaintiff).

DUPONT, C. J. The defendant appeals from the judgment of the trial court, rendered after a jury trial, awarding the plaintiff $165,941.56 in damages for the

death of the plaintiff's decedent caused by the defendant's negligence. The defendant claims that the plaintiff failed to prove, by a preponderance of the evidence, that the defendant's negligence was the proximate cause of the decedent's injuries and subsequent death. The defendant claims that because the plaintiff failed to meet its burden of proof on this issue, the trial court improperly denied her motion for a directed verdict after the presentation of the plaintiff's case, and improperly denied her motion to set aside the verdict and render judgment in her favor. The defendant also claims that the trial court improperly admitted into evidence a portion of the decedent's hospital records that indicated that the decedent "fell down a flight of stairs." We affirm the judgment of the trial court.

The essential allegations of the plaintiff's complaint were that the defendant's failure to maintain sufficient lighting in the upstairs hallway during hours of darkness, and the failure to warn her houseguests of the allegedly dangerous and unsafe condition, breached her duty of care to the decedent, especially because the head of the stairway and the doorway of the room in which the decedent was staying were nearly equal walking distance and in the same direction from the bathroom. The plaintiff further alleged that this dangerous and unsafe condition caused the decedent to fall down the stairs to his death.

The pertinent facts in this case are undisputed. The defendant owned and lived in a one-family house. On October 14, 1988, the plaintiff[1] and her husband Jesse Hall, the decedent, were overnight guests of their daughter, the defendant. The plaintiff and the decedent were sleeping in a bedroom located next to the stairway on the second floor of the defendant's house.

[1] The decedent's wife is the plaintiff in this case in her capacity as administratrix of her deceased husband's estate.

It was the first time they had visited that particular house of the defendant and the second night of their stay. At approximately 3 a.m., occupants of the defendant's house heard a thump and arose from bed to find the decedent lying unconscious at the bottom of the stairway on the first floor. When the occupants arose from bed, the hallway was unlit. The decedent never regained consciousness, and subsequently died on February 25, 1989, as a result of the injuries he sustained from that fall.

At trial, the parties stipulated that the injuries and damage sustained by the decedent were caused by his fall. The critical issue in the case, however, was whether the decedent's fall was proximately caused by the defendant's negligence. The plaintiff presented evidence that indicated that there was no light in the hall at the time of the fall. The defendant testified that she regularly leaves a dim light on in a room occupied by her grandchildren, the great grandchildren of the plaintiff and the decedent. The defendant stated that she leaves their door open so that anyone in the second floor hallway would have sufficient light to find their way about. On the night in question, however, one of the grandchildren had a nightmare and his crying woke up the defendant. Afraid that the continued crying of the grandchild might awaken other people sleeping in the house, the defendant closed the door to the grandchildren's room, and, therefore, the second floor hallway was in total darkness. Sometime after the defendant closed the door, the decedent got out of bed and entered the hallway on his way to the bathroom.

Nobody witnessed the decedent's fall. One occupant of the house, Weston Robinson, a friend of the defendant, testified that he heard the decedent tumble down the steps, but no witness could testify with certainty as to what caused the decedent to fall. The plaintiff presented evidence that the decedent was in good health

at the time of the fall, and that there was no medical sign that the decedent had suffered a stroke, fainted, or experienced some other physical ailment prior to the fall. The jury returned a verdict in the plaintiff's favor. It found the plaintiff's decedent's medical, hospital and funeral expenses to be $157,426.95, and it awarded the decedent's estate $50,000 for the destruction of the decedent's life. The jury also found, however, that the plaintiff's decedent was 20 percent contributorily negligent, and, thus, the trial court reduced the financial award by 20 percent and rendered judgment against the defendant for $165,941.56.

At the close of the plaintiff's case-in-chief, the defendant moved for a directed verdict. She claimed that the plaintiff failed to present any evidence that the decedent's fall was proximately caused by the defendant's negligence. The trial court denied the motion. After the jury returned its verdict, the defendant moved to set aside the verdict and to enter judgment in favor of the defendant, again claiming that there was no evidence of proximate causation. The trial court denied this motion too, and rendered judgment for the plaintiff.

Our standards of review for the denial of a motion for a directed verdict and denial of a motion to set aside a verdict are the same. In reviewing such denials, "we view the evidence in the light most favorable to the plaintiff. . . . A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in [a verdict for the defendant] . . . or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Citations omitted.) *Boehm* v. *Kish,* 201 Conn. 385, 388–89, 517 A.2d 624 (1986). When a jury has returned a verdict and the trial court has refused to set it aside, "[t]he court's decision will be upheld on appeal if, from the evidence presented,

the jury could reasonably have concluded as it did."
*Paine Webber Jackson & Curtis, Inc.* v. *Winters,* 22
Conn. App. 640, 647, 579 A.2d 545, cert. denied, 216
Conn. 820, 581 A.2d 1055 (1990); see also *Spitzer* v.
*Haims & Co.,* 217 Conn. 532, 550, 587 A.2d 105 (1991).

"The elements of a cause of action for negligence are
duty, breach, causation and damages. *Doe* v. *Man-
heimer,* 212 Conn. 748, 755, 563 A.2d 699 (1989)." *Coste*
v. *Riverside Motors, Inc.,* 24 Conn. App. 109, 112, 585
A.2d 1263 (1991). The defendant does not challenge
that the jury could have found that the defendant owed
a duty to the plaintiff's decedent with respect to light
in the hallway, that the defendant breached that duty,
and that she had notice of the defective lighting. The
defendant argues only that the plaintiff failed to present
sufficient evidence from which a jury could find that
the defendant's negligence was the proximate cause
of the decedent's fall.

"In order for legal causation to exist, actual cause
or cause in fact, as well as proximate cause, must be
present. . . . Actual cause requires allegations that
state that the particular injury would not have occurred
in the precise way that it did occur without the defend-
ant's conduct." (Citations omitted.) *Coste* v. *Riverside
Motors, Inc.,* supra, 113. Proximate cause, on the other
hand, "is defined as an actual cause that is a substan-
tial factor in the resulting harm. . . . The fundamen-
tal inquiry in the substantial factor test is whether the
harm which occurred was of the same general nature
as the foreseeable risk created by the defendant's negli-
gence. . . . The determination of proximate cause is
ordinarily a question of fact for the trier; it becomes
a question of law only when the mind of a fair and rea-
sonable person could reach only one conclusion . . . .
The question should be submitted to the trier of fact
if there is room for a reasonable disagreement." (Cita-
tions omitted; internal quotation marks omitted.) Id.,

114; *Hughes* v. *National Car Rental Systems, Inc.*, 22 Conn. App. 586, 589, 577 A.2d 1132, cert. denied, 216 Conn. 817, 580 A.2d 57 (1990).

In the present case, the plaintiff presented no direct evidence that the lack of light in the hall was the proximate cause of the decedent's fall. Rather, the plaintiff relied on circumstantial evidence. The plaintiff, in effect, asked the jury to infer that the absence of proper lighting was the proximate cause of his fall. Although inferences may be drawn from circumstantial evidence, "such inferences 'must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture.' " *Boehm* v. *Kish*, supra, 389.

"Circumstantial evidence . . . may provide a basis from which the causal sequence may be inferred. Thus it is every day experience that unlighted stairs create a danger that someone will fall. Such a condition 'greatly multiplies the chances of accident, and is of a character naturally leading to its occurrence.' When a . . . person tumbles down the steps, it is a reasonable conclusion that it is more likely than not that the fall would not have occurred but for the bad lighting. . . . Such questions are peculiarly for the jury; and . . . are questions on which a court can seldom rule as a matter of law. And whether the defendant's negligence consists of the violation of some statutory safety regulation or the breach of a plain common law duty of care, the court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent, and accordingly allow a certain liberality to the jury in drawing its conclusion." W. Prosser & W. Keeton, Torts § 41.

The question with which we are presented is whether it is reasonable and logical for the jury to infer, from

the evidence presented, that the fall would not have occurred in the manner that it did if there were light in the hallway, that the lack of light in the hallway was a substantial factor in the fall of the defendant, and that the decedent's fall was of the same general nature as the foreseeable risk created by the defendant's negligence.

The facts in the present case are not unlike the facts in *Sullivan* v. *Hamacher,* 339 Mass. 190, 158 N.E.2d 301 (1959). In *Sullivan,* the deceased lived alone on the second floor of a tenement and shared a hallway and a common bathroom with other tenants. The common hallway on the second floor had no light on the day of her fall, and, thus, the hallway was "pitch black after darkness set in." Id., 191. The deceased was last seen at about 6:30 p.m. on February 7, 1954. When she was entering her apartment, she stated to a neighbor that she had to use the bathroom, and that she wished the lighting in the hall were fixed. The deceased was next seen at 7:30 a.m. on February 8, 1954, as she lay dead at the bottom of the tenement stairway. In upholding the denial of the defendant's motion for a directed verdict, the court stated: "Upon the evidence, in our opinion, the jury could warrantably find that the deceased met her death by reason of the negligence of the defendant in failing to maintain the light in the hallway . . . . [I]t was a question for the jury and . . . it was properly left to them for their determination." Id., 194–95; see also *Mikaloros* v. *Stamatouras,* 348 Mass. 700, 701, 206 N.E.2d 62, 63 (1965) (jury could find causal connection between failure to light hallway and the plaintiff's injury); *Ingersoll* v. *Liberty Bank of Buffalo,* 278 N.Y. 1, 8–9, 14 N.E.2d 828 (1938) (in the absence of eyewitnesses, it was reasonable for jury to infer that deceased's fall was caused by a defective step in a staircase).

In the present case, the jury's inference that the fall would not have occurred in the manner that it did if there were light in the hallway was both reasonable and logical. It was also reasonable and logical for the jury to infer that the lack of light in the hallway was a substantial factor in the fall of the decedent. This is particularly so, given the fact that the bedroom door and the head of the stairway were approximately an equal distance and in the same direction from the bathroom, that this was the first visit the decedent had made to the defendant's house, and that the decedent was not familiar with the layout of the defendant's house. Additionally, "[t]he harm suffered by the [decedent] was of the same general nature as the foreseeable risk caused by [the defendant's failure to keep the hallway lit]." *Commercial Union Ins. Co.* v. *Frank Perrotti & Sons, Inc.,* 20 Conn. App. 253, 260, 566 A.2d 431 (1989). "[T]he fact that both the court and the jury concurred in their determination is a persuasive argument for sustaining the action of the court on the motion [to set aside the verdict]." (Internal quotation marks omitted.) *Todd* v. *Glines,* 217 Conn. 1, 7, 583 A.2d 1287 (1991).

We conclude, therefore, that the trial court correctly denied the defendant's motion for a directed verdict and motion to set aside the verdict, because the jury could reasonably and logically conclude from the evidence presented that "under all the circumstances it was more probable than not that the decedent's fall . . . was proximately caused by the proximity of the doorway to the stairway, as alleged" in conjunction with the absence of light in the hallway. *Facey* v. *Merkle,* 146 Conn. 129, 135, 148 A.2d 261 (1959).

The defendant also claims that the trial court improperly admitted into evidence a portion of the decedent's hospital records, offered by the plaintiff ostensibly to prove damages. Specifically, she claims that a portion of the records that states that the decedent "fell down

a flight of stairs" was both irrelevant to the hospital's medical treatment, and prejudicial to her case because, she claims, the jury could infer from this language that the decedent fell from the top of the stairway. Initially, we note that the defendant stipulated that the decedent's injuries and subsequent death were caused by the fall on the stairs. The defendant contends, however, that she did not stipulate to the location on the steps from where the decedent fell, and that it is possible that the decedent fell from the first step up from the first floor. The defendant hypothesizes that the decedent may have been downstairs just prior to his fall, and that he turned off the lights himself just before he fell. We will not resort to such speculation. There was absolutely no evidence suggesting that the decedent was anywhere but on the second floor just prior to his fall. Furthermore, one of the witnesses testified that he heard the decedent "tumble down" the stairs. The trial court, therefore, properly admitted the decedent's hospital records.

The judgment is affirmed.

In this opinion the other judges concurred.