[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
This is a products liability action claiming damages for wrongful death of three men who were asphyxiated in an underground storage facility on February 3, 1983, on property of the Norbert E. Mitchell Company (hereafter called "Mitchell Fuel"), in Danbury. The plaintiffs are administrators of the estates of David C. Sharp, Robert Vidal and Alois Entress. The plaintiffs' decedents were employed by Mitchell Fuel which is in the retail petroleum business. The underground storage area is approximately 6 feet wide, 50 feet long and 10 feet high. Access to the underground storage area (hereafter called the "vault") was attained by a ladder through a 36 inch wide manhole. Adjacent to the vault were seven 25,000 gallon petroleum storage tanks. One contained kerosene, one contained diesel fuel and five contained No. 2 fuel oil. The plaintiffs' decedents entered the vault at the direction of their employer. David Sharp initially entered to shut off a valve leading to one of the fuel tanks and when he did not return he was followed in succession by Robert Vidal and Alois Entress. It is CT Page 3328 undisputed that the three men died of low amounts of oxygen in the vault, although the cause of this condition is disputed, and even the plaintiffs' experts are in disagreement over the cause of the condition in the vault.
The plaintiffs initially brought suit against Mitchell Fuel for negligence. Dismissal of that action was upheld by the Supreme Court in Sharp v. Mitchell, 209 Conn. 59 (1988) on the ground that some claims were barred by the exclusivity provision of the Workers' Compensation Act, Sec. 31-275 et seq. of the General Statutes, and the other claims made in an amended complaint were barred by the two year statute of limitations for wrongful death actions in section 52-555 of the General Statutes.
Mitchell Fuel is in the retail petroleum business. It buys its petroleum products from numerous wholesale distributors including Wyatt, Inc. ("Wyatt"), which was originally named as the only defendant in this action. On July 17, 1985, Wyatt served six of its suppliers with a third party complaint. The third party defendants are Exxon Co.; U.S.A.; B.P. North America Trading, Inc.; Moore-McCormack Petroleum, Inc.; Mt. Airy Trading Co.; Northville Caribbean Corp.; and Phibro Distributors. Their claims in this case are basically the same and they are hereafter collectively referred to as "the oil suppliers." The plaintiffs later brought an action against the six oil suppliers commencing the claims against them on various dates between September 24, 1985 and June 9, 1987. Both Wyatt and the oil suppliers have filed motions for summary judgment against the plaintiffs. The oil suppliers have also filed a motion for summary judgment against Wyatt on several grounds, including the statute of limitations.
The defendants' motions for summary judgment, including supplemental motions for summary judgment, are based on numerous grounds which can be summarized as follows:
1. The sale of the oil products by the oil suppliers to Wyatt and by Wyatt to Mitchell Fuel was not the proximate cause of the death of the decedents no matter which deoxidation theory is adopted by the plaintiffs.
2. Only a small percentage of the oil sold by Wyatt came from the oil suppliers, and Wyatt was only one of many suppliers to Mitchell Fuel so that plaintiffs cannot prove and identify that oil delivered by Wyatt, even if defective, was the proximate cause of the decedents' deaths.
3. The oil products were sold in bulk to CT Page 3329 sophisticated users, Wyatt and Mitchell Fuel.
4. The defendants had no duty to warn the plaintiffs about potential hazards with the oil.
5. If warnings were required, they were given by material safety data sheets supplied to Mitchell Fuel.
6. The plaintiffs' theory of death of the decedents, biological oxidation, is based on speculation.
7. Even if biological oxidation is the cause of death, that is not a defect in the oil products sold by the defendants.
8. The plaintiffs' claims are barred by the statute of limitations.
1. Test for Summary Judgment
A summary judgment may be granted under section 384 of the Connecticut Practice Book when all the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority, 213 Conn. 354, 364; Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11. To prove that there is no genuine issue of material fact, the moving party must show that it is quite clear what the truth is and that it excludes any real doubt as to the existence of any material fact. Fogarty v. Rashaw, 193 Conn. 442, 445; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434. A material fact has been defined as a fact that will make a difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578; Booth v. Flanagan, 23 Conn. App. 579, 584. A genuine issue has been described as either a triable, substantial or real issue of fact and one which can be maintained by substantial evidence. Craftsmen, Inc. v. Young, 18 Conn. App. 463, 465; United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378. In determining whether there is a material issue of fact, the evidence is considered in the light most favorable to the nonmoving party. Connell v. Colwell, 214 Conn. 242,246, 247. A party opposing the motion must raise evidentiary facts or substantial evidence outside the pleadings from which the material facts alleged in them can reasonably be inferred. Trotta v. Branford, 26 Conn. App. 407, 412; Na-Mor, Inc. v. Roballey, 24 Conn. App. 215, 217.
A motion for summary judgment is designed to eliminate CT Page 3330 the delay and expense of litigating an issue when there is no real issue to be tried. Wilson v. New Haven, 213 Conn. 277,279. The test on whether a summary judgment should be granted, namely, that the moving party must be entitled to judgment as a matter of law, is resolved by applying to the established facts the same criteria as are used in determining whether a party would be entitled to a directed verdict on the same facts. Id., 279, 280; Connelly v. Housing Authority, supra, 364; State v. Goggin, 208 Conn. 606,616; Booth v. Flanagan, supra, 585. In Connecticut, a directed verdict may be rendered where the evidence, viewed in the light most favorable to the nonmoving party, does not allow the trier of facts to reasonably reach any other conclusion than the one in the directed verdict. Sheridan v. Board of Education, 20 Conn. App. 231, 239; United Oil Co. v. Urban Redevelopment Commission, supra, 380. A directed verdict may also be granted if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party; when an element necessary to a cause of action cannot be established without conjecture, the evidence presented cannot withstand a motion for a directed verdict. Boehm v. Kish, 201 Conn. 385, 389.
While summary judgments are not readily granted, particularly in complex cases, the moving party does not have to show with absolute certainty that the jury will reach the same result after a full trial on the merits. Although the parties have attached a large number of documents to their briefs for and against the motions for summary judgment, most of that information is extraneous to the key factual issues here. Moreover, after more than seven years of extensive investigation and depositions, there is still no certainty exactly what caused the plaintiffs' decedents to die of asphyxiation. In short, it is questionable whether the lengthy trial on the merits that would be required in this case will disclose any new material facts affecting the outcome of the trial. The undisputed facts from the pleadings and documents submitted support the right of the defendants to summary judgment on at least some of the issues raised in their motions.
2. Proximate Cause Problems
A products liability claim as defined in section 52-572m(b) of the General Statutes is the exclusive remedy against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product. Section 52-572n of the General Statutes; Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 465; Daily v. New Britain Machine Co., 200 Conn. 562, 571. "In order to CT Page 3331 recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." Giglio v. Connecticut Light Power Co., 180 Conn. 230, 234; Coe-Park Donuts, Inc. v. Robertshaw Controls Co., 1 Conn. App. 84,86. Products liability claims fall into three areas: (1) design defects; (2) manufacturing defects; and (3) failure to warn that a product, even if free from design or manufacturing defects, is unreasonably dangerous.
The plaintiffs' claim in this case is in the third category, and is based specifically on section 52-572q of the General Statutes (liability of product seller due to lack of adequate warnings or instructions). Even if a product is defective so that warnings are required under section 52-572q, and the seller failed to give adequate warnings, the plaintiff must still prove by a preponderance of the evidence that if adequate warnings or instructions had been provided, the plaintiff would not have been injured. Section 52-572q (c) of the General Statutes. Accordingly, the plaintiff must prove that the failure to warn about the defect was the proximate cause of the plaintiffs' injuries. DeJesus v. Craftsman Machinery Co., 16 Conn. App. 558, 573,574; Giglio v. Connecticut Light Power Co., supra, 234. Proof that warnings by a product seller were required under the statute does not create a presumption that the failure to warn was a proximate cause of the injury to the claimant. DeJesus v. Craftsman Machinery Co., supra, 574.
Assuming that the defendants had a duty to warn Mitchell Fuel or its employees of potential dangers from oil products, that the oil sold was in fact dangerous and that no warnings were given, the question remains whether selling the oil products without warnings was the proximate cause of the death of the three Mitchell Fuel employees. The court agrees with the defendants that the evidence presently in the record does not show the asphyxiation of the three men in the Mitchell Fuel underground vault was proximately caused by any breach of duty of the defendants, including failure to warn of any foreseeable dangers from oil supplies sold by the defendants. As the defendants claim, the plaintiffs did not die from defective or dangerous oil, but from lack of oxygen in an underground vault from unknown causes. At most, there is a possibility that deoxidation was indirectly caused by oil which seeped into the vault from a tank which may have CT Page 3332 leaked, which may have contained a small percentage of oil which may have been supplied by one or more of the defendants.
Proximate cause is ordinarily a question of fact, and the test is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's conduct. Coburn v. Lenox Homes, Inc.,186 Conn. 370, 384; Merhi v. Becker, 164 Conn. 516, 521. Proximate cause becomes a question of law, however, when the mind of a fair a reasonable man could reach only one conclusion. Burns v. Gleason Plant Security, Inc.,10 Conn. App. 480, 485. If a defendant's conduct is a substantial factor in producing the plaintiff's injuries, the defendant is not relieved from liability for those injuries even though another force concurs to produce them. Miranti v. Brookside Shopping Center, Inc., 159 Conn. 24, 29; Mahoney v. Beatman, 110 Conn. 184, 199. In Connecticut, the test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries, and the plaintiff has the burden of proving an unbroken sequence of events that ties the injuries to the defendant's conduct. Wu v. Fairfield, 204 Conn. 435,438, 439; Boehm v. Kish, supra, 391, 392. The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. Wu v. Fairfield, supra, 439; Peterson v. Oxford, 189 Conn. 740, 749. "This causal connection must be based upon more than conjecture and surmise." Wu v. Fairfield, supra, 439; Boehm v. Kish, supra, 391. "In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice. See generally, Palsgraf v. Long Island R. R. Co., 248 N.Y. 339,352, 354-56, 162 N.E. 99 (1928)." Boehm v. Kish, supra, 391, 392; Doe v. Manheimer, 212 Conn. 748, 758. The law insists on drawing such lines and concluding that at some point the defendant's conduct, even if unlawful, is so remote from the plaintiff's injuries that it cannot reasonably be considered the proximate cause of those injuries, Burns v. Gleason Plant Security, Inc., supra, 485, namely, that it is not a substantial factor in causing the injuries.
Connecticut cases finding lack of probable cause connecting a decedent's death and wrongful conduct of a defendant fall into two categories. This case contains elements of both. In some cases, while the cause of death is undisputed, there are several factual possibilities which can explain the actual cause of the accident. Wu v. Fairfield, CT Page 3333 supra, 440 (decedent's death due to drowning not connected to any negligence by defendants); Boehm v. Kish, supra, 392 (fatal one car accident involving deceased intoxicated driver not shown to be causally connected to intentional serving of liquor to decedent by defendant, since cause of accident could only be based on speculation and conjecture). Other cases reject liability where there is no showing that the harm to the plaintiff is of the same general type which is foreseeable by a defendant to be within the scope of the risk assumed by the defendant's wrongful conduct. Doe v. Manheimer, supra, 762-764 (overgrowth of vegetation on defendant's property not proximate cause of personal injuries to a plaintiff as a result of a sexual assault by an unknown assailant); Burns v. Gleason Plant Security, Inc., supra, 486 (no foreseeable risk that keys left in an unlocked car in a high crime area would be stolen by a third party and that the driver would drive elsewhere, enter a store, commit an armed robbery and assault an innocent person in the course of the robbery); Vastola v. Connecticut Protective System, Inc., 133 Conn. 18 , 21 (non-activation of a burglar alarm on plaintiff's property not the proximate cause of a burglary where it was speculation whether the ringing of the alarm would have prevented the loss). In addition, there is a series of cases holding that a plaintiff cannot recover from a person who serves alcohol to a third party who thereby voluntarily becomes intoxicated and injures the plaintiff, because the proximate cause of the intoxication is not the furnishing of the alcohol by the defendant but the consumption of it and subsequent conduct by the third party. Nolan v. Morelli, 154 Conn. 432, 436; Boehm v. Kish, supra, 389; Kowal v. Hofher, 181 Conn. 355, 357-58; Slicer v. Quigley, 180 Conn. 252, 255.
In this case, the documents produced in opposition to the defendants' motions do not show that Wyatt or the oil suppliers would reasonably foresee the possibility of death to employees of a retail supplier of oil products in an underground vault not known to the defendants and which was not supposed to and not likely to contain oil products supplied by them. This is particularly true when it is considered that the cause of death was asphyxiation not caused by a defect in the product sold by the defendants.
While the plaintiff is correct that more than one proximate cause may result in an injury and that an actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm, Coburn v. Lenox Homes, Inc., supra, 383, any failure of the defendants to provide any warning required by section 52-572q of the General Statutes cannot reasonably be considered a substantial factor in the CT Page 3334 death of the plaintiffs' decedents. If anyone was at fault, it was the decedents' employer, Mitchell Fuel, which built and maintained the underground vault, allowed oil to leak from its tanks and enter the vault, failed to ventilate it properly, and sent the three decedents to their death. In addition, even if the defendants sold defective fuel without proper warnings, that would be such a remote factor in the decedents' deaths when compared with the conduct of Mitchell Fuel, that the doctrine of superseding cause would undoubtedly relieve the defendants from any liability. See Burns v. Gleason Plant Security, Inc., supra, 483.
The plaintiffs' claims fail on both components of "legal cause" as discussed in Doe v. Manheimer, supra, 757. The first component of legal cause, namely, "causation in fact" is measured by the test as to whether the injury would have occurred if it were not for the defendants' conduct. It must be kept in mind that all that Wyatt did was sell oil products wholesale to an experienced, retail oil supplier, Mitchell Fuel. There is no reason to assume that any warnings given to Mitchell (which Wyatt claimed occurred) would have prevented the bizarre death of the decedents. The second component of "legal cause," namely, proximate cause excludes remote or trivial actual causes. Id., 757, 758. "That negligent conduct is a `cause in fact,' however, obviously does not mean that it is also a `substantial factor' for the purposes of a proximate cause inquiry. The `substantial factor' test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, `whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.'" Id., 758.
In fact, it is difficult for the plaintiffs to even satisfy the first part of the test, because even if the speculative chain of events causing the deaths exists, it still would have occurred even if Wyatt, a minor supplier to Mitchell Fuel, had never sold Mitchell any oil products. This leads to the second ground of the defendants' motion, the identification problem, which also has merit.
3. Identification Requirement
The plaintiffs' proximate cause problem is heightened by the fact that it is unable to show, with reasonable probability, that Wyatt's oil, some of which was supplied by the oil supplier defendants, was the oil in the vault. Extensive discovery and documents submitted by the parties show that in the month prior to February 3, 1983, about 5 percent of the No. 2 fuel oil and about 25 percent of all the CT Page 3335 petroleum products purchased by Mitchell Fuel came from Wyatt. (Wyatt supplied 100 percent of the kerosene and diesel fuel during that period, although the relevance of that fact is unclear.) There are seven tanks adjacent to the vault, and five of them contain No. 2 fuel oil. Accepting the plaintiffs' version of the facts, all seven tanks were leaking, although there is no concrete evidence to what extent they were leaking, and which tanks were leaking more than others. The plaintiffs have not submitted documents showing that any significant amount of oil was in the vault. Mathematical probabilities would suggest that some of the oil, although a small percentage, originally came from Wyatt, but six other wholesale suppliers sold the remaining 95 percent of the fuel oil to Mitchell in the month prior to the accident. Since this was the middle of the winter heating season, presumably most of the deliveries to Mitchell and in the tanks were No. 2 fuel oil. (Plaintiffs' experts have not identified kerosene and diesel fuel in the vault at the time.) As a result, the plaintiffs must resort to speculation and conjecture that oil supplied by Wyatt resulted in deoxidization of the vault and that a party which caused the decedents' death is in this case. The amounts furnished by oil suppliers to Wyatt who are in the case are even less, making identification harder as to them. If all of Mitchell Fuel's suppliers were included, the plaintiffs could at least claim that they had sued a defendant which caused the deaths, even if they could not pinpoint the responsible defendant or defendants. This is not the case here where most of the suppliers, both in number and in volume of oil supplied, are not defendants. Moreover, under the somewhat contradictory theories of both the plaintiffs' two experts, Paul Brubaker and George Hoag, the decedents did not die from any contact with the fuel oil supplied by Wyatt and the others, but because of lack of oxygen in the vault (i.e. death was not due to inhalation of fumes).
In order to recover in a products liability claim, it must be shown that the defendant's product caused the injury complained of. Marko v. Stop Shop, Inc., 169 Conn. 550,553; Giglio v. Connecticut Light Power Co., supra, 234; Zichichi v. Middlesex Memorial Hospital, 204 Conn. 299,403; Zezima v. Eli Lilly Co., 15 CLT No. 26, p. 24; (D.C.Conn. March 15, 1989) (inability of plaintiff to identify manufacturer of DES which caused injury). See also Rossignol v. Danbury School of Aeronautics, Inc., 154 Conn. 549,562.
Cases from other states have barred recovery or granted summary judgment on a products liability claim when the plaintiff could not identify that it was the defendant's CT Page 3336 product which caused the injury or damage complained of. 63 Am.Jur.2d 140-142, Products Liability, Sec. 164; 1 Hursh and Bailey, American Law of Products Liability 2d, Sec. 1. 41 p. 125; Abel v. Eli Lilly Co., 418 Mich. 311,343 N.W.2d 164 (1984); Case v. Fibreboard Corporation, 743 P.2d 1062
(Okla. 1987) (only 22 out of 300 sellers of asbestos products); Cummins v. Firestone Tire Rubber Co.,495 A.2d 963 (Pa.Super. 1985); Blackston v. Shook and Fletcher Insulation Co., 764 F.2d 1480 (11th Cir. 1985); Marshall v. Gray v. United States, 445 F. Sup. 336 (S.D. Texas 1978) (inability to prove that defendant as one of more than one hundred sellers of product was the seller of the DES that injured the plaintiff); Brown v. Stone Manufacturing Co., Inc., 660 F. Sup. 454 (S.D.Miss. 1986). Since strict liability is imposed for injuries which are the proximate result of product defects, unless the manufacturer's product is the proximate cause of the injuries, there can be no recovery; "a manufacturer has the absolute right to have his strict liability for injuries adjudged on the basis of his own marketed product and not that of someone else." Blackston v. Shook Fletcher Insulation Co., supra, 1482-1483, citing Tally v. City Tank Corp., 158 Ga. App. 130,279 S.E.2d 264, 269 (1981). In Cummins v. Firestone Tire Rubber Co., supra, liability for negligence and strict liability was rejected where a plaintiff injured by an explosion of a multipiece tire and rim assembly could not identify the particular manufacturer or supplier of the tire and rim assembly and could not identify the product which caused his injury.
To overcome this problem, the plaintiffs rely upon Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, a wrongful death action involving exposure of a worker to asbestos at his place of employment over a period of several years. While the defendant there claimed that the amount of asbestos products sold to the employer was less than percent of such products used by the employer, there was no evidence to support that claim. Moreover, there was testimony that workers at the plant handled the products manufactured by the defendant, id., 512, 530, and the defendant was exposed to and inhaled asbestos dust over a period of years. The defendant's products contained a high percentage of asbestos, and the asbestos dust from the defendant and others was the ultimate cause of the decedent's death. The court did not set aside the verdict because there was undisputed evidence of the decedent's exposure to the asbestos dust, some of which was manufactured by the defendant. Other cases have denied recovery where there was no showing that the decedent or injured party was ever exposed to the defendant's products even though asbestos was CT Page 3337 supplied to the place of employment. Bauer v. Raymark Industries, Inc., 849 F.2d 790 (2nd Cir. 1988); Richards v. Raymark Industries, Inc., 660 F. Sup. 599 (E.D.Pa. 1987).
The facts of this case are materially different from Champagne; the decedent did not die from defective oil inhaled over a period of time, but rather from a temporary condition of lack of oxygen in the Mitchell vault on one specific occasion. The co-mingling of the oil in the tanks, and uncertainty as to the supplier of material that leaked from the tanks, makes it impossible to determine that Wyatt's oil was in the vault on the date in question. While the plaintiffs' experts think that oil may have leaked from the seven tanks into the vault, there is no evidence where the tanks leaked, and which retail suppliers' oil leaked out of the tanks and into the vault. The position of the oil of the respective suppliers within the tanks has not been and probably cannot be shown. Moreover, Mitchell Fuel's highest volume oil supplier, Connecticut Petroleum, is not a party and all of the wholesale suppliers other than Wyatt, namely, Sun Oil, Buckley Bros., George Warren, Pittston, and Santa are not parties.
The plaintiffs rely upon the doctrine of alternative liability to avoid proving that oil supplied by Wyatt caused the injury. The plaintiffs do not rely upon the enterprise liability or market share liability concepts. (See plaintiffs' brief of May 6, 1991, p. 1.) The alternative liability doctrine follows section 433B(3) of the Restatement (Second), Torts and applies where: (1) all defendants have acted tortiously; and (2) there is uncertainty as to which defendant caused the harm. Under this concept, the burden shifts to each defendant to prove that it did not cause the injury. This theory has not been adopted in Connecticut and will not be followed here in deciding whether the defendants are entitled to summary judgment. Moreover, cases applying the theory are based on factual situations where all or substantially all of the product manufacturers or suppliers are included as defendants. Liability is predicated on the fact that at least some of them, or all of them, caused the injury and that the plaintiff should not be required to specifically identify whose product was responsible. A far different situation exists where only one supplier, who provided a small percentage of the product is the only defendant, because it cannot be shown that the plaintiffs were injured by a product supplied by at least one of the defendants in the action. Marshall v. Celotex Corporation, supra, (plaintiff must show that injury caused by at least one of multiple defendants, which requires including all defendants who possibly could have caused the CT Page 3338 injury as parties); Cummins v. Firestone Tire Rubber Co., supra.
4. Speculation on Cause of Death
The plaintiffs initially claimed that the oil products that leaked from the tanks into the vault caused vapors which displaced oxygen. This theory was advanced by the plaintiffs' first expert, Paul Brubaker, although discredited by other expert witnesses including the plaintiffs' second expert, George Hoag. The lack of a plausible theory connecting lack of oxygen in the vault with the defendants' oil products is, as previously discussed, a critical consideration on whether the plaintiff can prove proximate cause. At some point evidence is so weak, because based on speculation, that the court must direct a verdict. Boehm v. Kish, supra, 389. The theory that vapors from the products displaced oxygen is apparently physically impossible from the chemistry of the oil products here. The plaintiffs' new theory, proposed by Hoag, is biological oxidation, namely, that bacteria in the vault reacted with the petroleum products that were present, and that this process of microbial oxidation consumed the oxygen in the vault. While this theory is also speculative, there is some evidence in the record from Hoag's deposition to support it to a sufficient extent that it cannot be ruled out on a motion for summary judgment. However, in order to recover in a products liability action, there must be proof that the product was defective and that the defect was the proximate cause of the plaintiff's injuries. Marko v. Stop Shop, Inc., supra, 553; Wierzbicki v. W. W. Grainger, Inc., 20 Conn. App. 332,334.
5. Proof of a Defective Product Required
One of the requirements for recovery under the doctrine of strict tort liability is that "the product was in a defective condition unreasonably dangerous to the consumer or user." Giglio v. Connecticut Light Power Co., supra, 234; Restatement (Second), Torts, Sec. 402A. The products liability statute, section 52-572m, does not define "defect" or "defective." A defect is a deficiency and the word "defective" means "having a defect" or that something is "faulty." American Heritage Dictionary, 2nd College Ed. As the defendants claim, the fact that oil is subject to bacterial oxidation is not a defect or fault with the product. All oil and any organic product decays over time and is subject to biological oxidation. Liability of a product seller under the product liability statutes is premised on the fact that the product is defective. CT Page 3339 Wierzbicki v. W. W. Grainger, Inc., supra, 334. "A product may be defective because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities." Tomer v. American Home Products Corporation, 170 Conn. 681,689; Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Sup. 164 (D.Conn. 1984). The plaintiffs depend upon a claimed duty to warn under section 52-572q of the General Statutes. The statute also requires proof of a defective product. "A product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided." (Emphasis added.) Section 52-572q(a) of the General Statutes. If the decedents deaths were caused by biological oxidation as claimed by the plaintiffs, the defendants have no legal responsibility as a matter of law because no defect in the oil caused the deaths.
While there may be a duty to warn of some potentially dangerous characteristics of oil products (combustion, inhalation, or consumption), there is no question of material fact on the plaintiffs' claim of failure to warn based on section 52-572q, because no such product defect or danger caused the injury. Accordingly, it is unnecessary to consider the factual considerations required by the statute to determine whether instructions or warnings were required, whether they were given here, whether they were given to the proper person to prevent the potential harm, and whether, if adequate warnings and instructions were given, they would have prevented the injury. The defendants are entitled to judgment as a matter of law on the claim of failure to warn under section 52-572q.
Since summary judgment is granted on other grounds, it is unnecessary to consider the defendants' other defenses to section 52-572q, including adequacy of warnings by furnishing to Mitchell Fuel material safety data sheets, and the bulk seller defense.
6. Statute of Limitations
The oil suppliers have raised a statute of limitations defense to both the plaintiffs' complaint and Wyatt's third party complaint against them. They rely upon section 52-577c (b) of the General Statutes which provides a two year statute of limitations in actions for damages "for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment." This statute is by its own terms an exception to the general products liability statute of CT Page 3340 limitations, section 52-577a of the General Statutes. A summary judgment may be granted when it is clear that a claim is barred by the statute of limitations. Mac's Car City, Inc. v. American National Bank, 205 Conn. 255; Barnes v. Schlein, 192 Conn. 732, 738; Burns v. Hartford Hospital,192 Conn. 451, 454; Arsenault v. Pa-Ted Spring Co.,203 Conn. 156, 158.
The plaintiffs' decedents were injured and died on February 3, 1983. "No product liability claim as defined in section 52-572m shall be brought but within three years from the date when the injury, death or property damage is first sustained. . . ." Section 52-577a (a) of the General Statutes. The plaintiffs sued Wyatt on January 28, 1985, which would comply with either section 52-577a or 52-577c. Wyatt brought its third party complaint against the oil suppliers as third party defendants on July 17, 1985. If section 52-577a applies, the third party complaint is not barred by the statute of limitations. A product seller can implead any third party who is or may be liable for all or part of the plaintiffs' claim if the third party defendant is served with the third party complaint within one year from the date the original action is returned to court. Section 52-577a(b) of the General Statutes. There is no comparable provision in section 52-577c, and if it applies, both the complaint and third party complaint against the oil suppliers are barred by the statute of limitations. The plaintiffs contend that section 52-577c does not apply to this case for several reasons: (1) unlike section 52-577a, it does not cover wrongful death actions; (2) the legislative history of the statute shows that it applies only to injuries from the release of hazardous materials into the environment; and (3) the statute only covers "exposure" to a hazardous substance or pollutant. Wyatt agrees with the plaintiffs that the three year statute in section 52-577a applies to this claim.
While the terms "hazardous chemical substance or mixture" and "hazardous pollutant" are defined in section 52-577c(a), there is an insufficient factual basis in the record at this time to determine whether any oil products which leaked into the vault are within these definitions. The plaintiffs state on page 9 of their brief of May 6, 1991, that the amended complaint does not allege that the decedents were exposed to hazardous chemicals, but rather that they died from asphyxiation. There is also a mixed question of fact and law whether the decedents were "exposed" to oil "released into the environment."
It cannot be decided at this time which statute of limitations applies, so the motion for summary judgment by CT Page 3341 the oil supplier defendants against Wyatt cannot be granted. Moreover, a decision on that motion is academic, since Wyatt's third party action is for indemnification, which depends upon liability of Wyatt to the plaintiffs. The granting of Wyatt's motion for summary judgment disposes of the plaintiffs' complaint. The courts do not decide academic questions. Reply of the Judges, 33 Conn. 586; Shays v. Local Grievance Committee, 197 Conn. 566, 571.
The defendants' motions for summary judgment and supplemental motions for summary judgment to the plaintiffs' revised amended complaint are granted. Judgment shall enter for all defendants against the plaintiffs.
ROBERT A. FULLER, JUDGE
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 3351
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 3351-S