GREGORY T. BOEHM *v.* PAUL KISH ET AL.
(12847)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued October 1—decision released November 18, 1986

*Louis Ciccarello,* for the appellant (plaintiff).

*J. Kevin Golger,* with whom, on the brief, were *Paul V. McNamara* and *Robert Zeisler,* for the appellees (defendants).

SHEA, J. The principal issue[1] in this appeal is whether evidence of the defendants' reckless service of alcohol to the plaintiff, the plaintiff's intoxication, and the severe injuries subsequently sustained by the plaintiff while operating his automobile are sufficient to support an inference of causation in fact between the injuries and the defendants' actions, absent testimony or other evidence that explicitly concerned the nature of the accident that produced those injuries. We conclude that the plaintiff's failure to present any evidence of how the accident occurred in support of the causal inferences the jury might have drawn linking the plaintiff's intoxication to his injuries necessitated a judgment for the defendants.

---

[1] Because the trial court directed a verdict, and because we find no error and therefore need not be concerned with providing guidance for a new trial, we need not address the plaintiff's three claims of error with respect to the trial court's jury instructions.

The plaintiff brought this action in two counts against the defendant cafe owner and his bartender. In the first count the plaintiff alleged liability for wanton and reckless conduct. In the second count the plaintiff alleged liability for gross negligence. Each count alleged that the defendants, in violation of General Statutes § 30-86,[2] had served alcoholic beverages to the plaintiff while he was already in an intoxicated condition, and that such conduct had resulted in the injuries subsequently sustained by the plaintiff in operating his automobile. Each count further alleged that "the plaintiff lost control of the automobile and crashed into the guard rail," although no evidence was adduced at trial to support this allegation.[3]

It is not disputed that the following facts are reasonably supported by the evidence: On May 7, 1981, the plaintiff, Gregory T. Boehm, drank a quart of beer and then drove for approximately ten minutes to the Brook Cafe in Westport, a bar owned by the named defendant, Paul J. Kish. At the cafe, the plaintiff ordered a total of six large drinks of rum and orange juice from the bartender, the defendant Michael Zieff, with each drink containing three to five ounces of eighty proof rum. After his third drink, the plaintiff showed signs

[2] At the time of the accident General Statutes § 30-86 provided: "Any permittee who, by himself, his servant or agent, sells or delivers alcoholic liquor to any minor, or to any intoxicated person, or to any habitual drunkard, knowing him to be such an habitual drunkard, and any person, except the parent or guardian of a minor, who delivers or gives any such liquors to such minor, except on the order of a practicing physician, shall be subject to the penalties of section 30-113."

[3] Paragraph ten of both counts of the plaintiff's complaint read: "While traveling on the westbound entrance ramp of said exit, the plaintiff lost control of the automobile and crashed into the guard rail, sustaining the injuries hereinafter set forth." After reconsidering its earlier decision to strike paragraph ten entirely, the trial court instructed the jury: "I am striking that portion of paragraph ten from your consideration that reads 'The plaintiff lost control of the automobile and crashed into the guardrail.' I'm eliminating that from your consideration because I don't recall any evidence of loss of control or crashing into the guardrail."

of being intoxicated, slumping in his chair and slurring his speech, and, before ordering his sixth, he staggered about the bar and spilled his drink and some change. About four hours after arriving at the cafe, at approximately 7 p.m., having not quite finished his last drink, he stumbled to his car and then headed for the Connecticut turnpike. The plaintiff drove to a stoplight just before the entrance to the turnpike. As he turned onto the turnpike, he reached for his sunglasses "because the sun was real low on the horizon." He next found himself on the floor of the car, with people staring in the window.

The plaintiff was taken by ambulance to the Norwalk Hospital, where Edwin Mulford, a physician, determined that he had broken his neck and had been rendered a quadriplegic. Tests taken soon after the plaintiff had been admitted to the hospital indicated that his blood alcohol concentration was then .299, which corresponds to a content in the body of 15.25 ounces of eighty proof alcohol.

At the close of the evidence, the trial court, *Spear, J.*, reserved decision on the defendants' motion for a directed verdict. The court charged the jury and then submitted the case to the jury, which deliberated for about three hours that afternoon. The following morning, after reviewing the evidence and hearing oral argument, the court directed the jury to return a verdict for the defendants because the plaintiff had failed to present evidence about the automobile accident sufficient to establish causation. The court denied the plaintiff's subsequent motions to set aside the verdict and for a new trial.

The plaintiff on appeal has assigned error in the denial of his motion to set aside the verdict. In reviewing the ruling on this motion, we view the evidence in the light most favorable to the plaintiff. *Petyan* v. *Ellis*,

200 Conn. 243, 244, 510 A.2d 1337 (1986). A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed; id.; *McDonald* v. *Connecticut Co.,* 151 Conn. 14, 17, 193 A.2d 490 (1963); or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. *Mott* v. *Hillman,* 133 Conn. 552, 555, 52 A.2d 861 (1947). Although the elements of a cause of action may be established on the basis of inferences drawn from circumstantial evidence; see, e.g., *Cayer* v. *Salvatore,* 150 Conn. 361, 363, 189 A.2d 505 (1963); such inferences "must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture." *Palmieri* v. *Macero,* 146 Conn. 705, 708, 155 A.2d 750 (1959). An inference must have some definite basis in the facts. See *Latham* v. *Hankey,* 117 Conn. 5, 10–11, 166 A. 400 (1933). When an element necessary to a cause of action cannot be established without conjecture, the evidence presented cannot withstand a motion for a directed verdict.

Unlike General Statutes § 30-102, our Dram Shop Act, the statutory prohibition against serving alcohol to an intoxicated person contained in § 30-86, which the plaintiff invokes, does not authorize a private cause of action for damages. Thus the plaintiff's action is necessarily at common law. "We have held in a number of cases that there is no common-law action in negligence against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or of another. . . . The reason underlying the rule is that the proximate cause of the intoxication was not the sale or furnishing of the liquor but the consumption of it by the purchaser or donee." *Kowal* v. *Hofher,*

181 Conn. 355, 357–58, 436 A.2d 1 (1980). We held in *Kowal,* however, that the policy considerations that justify protecting a vendor or social host from common law liability for the injurious consequences of negligent conduct in the sale or serving of alcoholic beverages do not apply with respect to wanton and reckless misconduct. Id., 360–61.

A legal, or proximate, causal connection between the conduct and the resulting injury is a necessary element of causes of action in gross negligence or in recklessness. See, e.g., *Shinville* v. *Hanscom,* 116 Conn. 672, 674, 166 A. 398 (1933) ("to furnish a basis of recovery, reckless misconduct must have been a substantial factor in bringing about the injuries complained of"). A prerequisite to a determination of proximate causation is a finding of causation in fact. The decisive question in the present case, then, is whether the facts presented by the plaintiff are sufficient to support an inference of causation in fact.

This court was faced with the absence of evidence about the cause of a motor vehicle accident in *Palmieri* v. *Macero,* supra. In that negligence action, the trial court rendered judgment for the defendant, whose decedent had been driving the car, notwithstanding the jury's verdict for the plaintiff passenger. The plaintiff had testified that he had been asleep in the car and was awakened only when it struck a guardrail before going over an embankment. There were no witnesses to the accident, which the driver did not survive, though marks on the highway indicated that the car had been traveling at a fast rate of speed and was out of control. Because any one of a number of forces might have impelled the car along its erratic course, this court said that the conclusion of the jury that negligence of the driver was the proximate cause of the accident "was without evidential basis and could only have resulted from guesswork. *Latham* v. *Hankey,* [supra, 11]."

*Palmieri* v. *Macero,* supra, 707–708. Accordingly, the *Palmieri* court found no error below. In several other single vehicle accident cases where there were no eyewitnesses, we have similarly held that evidence is insufficient to support a verdict for the plaintiff where the issues of fault or proximate cause have not been removed from the realm of conjecture. *Meade* v. *Warehouse Transport, Inc.,* 165 Conn. 553, 556, 338 A.2d 111 (1973); *Toomey* v. *Danaher,* 161 Conn. 204, 207, 286 A.2d 293 (1971); *Chasse* v. *Albert,* 147 Conn. 680, 683, 166 A.2d 148 (1960).

The plaintiff in the present case asserts, as he must, that his is a stronger case than was Palmieri's. The plaintiff points to his drunken condition upon leaving the Brook Cafe, which resulted in his impaired ability to operate his car. He also relies heavily on our discussion of causation in *Kowal* v. *Hofher,* supra, 360, where we said that "[r]esponsibility for greater consequences may be considered justified in the case of intentional or reckless conduct than for mere negligence." We stated further that § 501, comment (a), of the Restatement (Second) of Torts "makes it clear that a jury may be permitted to find causation in cases of reckless misconduct even though no such finding would be permissible were the defendant's conduct merely negligent." *Kowal* v. *Hofher,* supra.

It is only by confounding the notion of proximate cause with that of causation in fact that our discussion in *Kowal* can be seen as supporting a finding of proximate cause in the present case. The ordinary test for causation in fact is, simply, "would the injury have occurred were it not for the actor's conduct." *Kowal* v. *Hofher,* supra, 359. "An actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm." *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 383, 441 A.2d 620 (1982). In determining proximate cause, the point beyond which the law

declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice. See generally *Palsgraf* v. *Long Island R. R. Co.,* 248 N.Y. 339, 352, 354–56, 162 N.E. 99 (1928) (Andrews, J., dissenting).

The finding of actual cause is thus a requisite for any finding of proximate cause. In *Kowal,* causation in fact was adequately traced back to the barkeeper who served an intoxicated person an alcoholic beverage, because it was also postulated that the intoxicated condition of that person had resulted in the negligent operation of the car that caused the collision. *Kowal* v. *Hofher,* supra, 356, 358. The question was whether proximate cause should be extended beyond consumption to such service when the latter constituted wanton and reckless misconduct. In the present case, as in *Palmieri,* any one of a number of factual possibilities may explain the actual cause of the accident. For example, as the trial court surmised, a vehicle might have come across the median divider and collided with the plaintiff's car, or might have hit his car from the rear. The plaintiff introduced no evidence to show whether the car had collided with any object, whether the car had been damaged, or even to show its position on the highway when it was found. There were no medical reports opining on how the plaintiff's particular injuries might have occurred. In sum, only speculation and conjecture could link the plaintiff's injuries to the conduct of the defendants. The burden was upon the plaintiff to prove an unbroken sequence of events that tied his injuries to the reckless service of alcohol to him by the defendants.

The plaintiff relies on the stairway accident case of *Blados* v. *Blados,* 151 Conn. 391, 198 A.2d 213 (1964), in which there was no eyewitness evidence regarding the cause of the fall of the decedent, whose body was found at the foot of a flight of stairs. There, however,

the plaintiff presented ample evidence showing the position of her decedent below the stairway, the probable distance he had fallen, and the nature of various irregularities that created a hazardous condition on the stairway. The claimant thus showed both a defect and the nature of the accident, facts sufficient to sanction the jury's inferences of cause and effect.

In the present case, the evidence at most supports an inference that an accident has followed an inebriation, not that the one was produced by the other. The plaintiff has provided no definite basis in the facts from which to draw the latter conclusion. Because the plaintiff put forth evidence at trial sufficient to prove no more than gross negligence and recklessness not necessarily related to the circumstances of the accident, we conclude that the trial court did not err in directing a verdict in favor of the defendants and in denying the plaintiff's motion to set aside the directed verdict.[4]

Finally, the plaintiff claims that the trial court erred in directing the verdict after the submission of the case

[4] Although the plaintiff claims his constitutional right of trial by jury under article first, § 19, of the Connecticut constitution, which declares "[t]he right of trial by jury shall remain inviolate," he conceded in oral argument that such right does not survive a lack of evidence on the issue of causation that would justify a directed verdict. See, e.g., *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982) ("[t]he court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding"); *Buckley* v. *Lovallo,* 2 Conn. App. 579, 583, 481 A.2d 1286 (1984) ("[a] directed verdict is appropriate 'when the jury could not reasonably and legally have reached any other conclusion.' *Sestito* v. *Groton,* 178 Conn. 520, 522, 423 A.2d 165 [1979]"); cf. *Seals* v. *Hickey,* 186 Conn. 337, 352, 441 A.2d 604 (1982) ("While we recognize the right of a court to set aside a jury verdict under proper circumstances, we acknowlege this fundamental right to trial by jury as 'one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact *as to which there is room for a reasonable difference of opinion among fair-minded men* passed upon by the jury and not by the court. *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 [1970].' *Mansfield* v. *New Haven,* 174 Conn. 373, 375, 387 A.2d 699 [1978]." [Emphasis added.])

to the jury. It is true generally that a directed verdict is not favored. *Petyan* v. *Ellis,* supra, 244; *Bleich* v. *Ortiz,* 196 Conn. 498, 500, 493 A.2d 236 (1985). Where the trial court's decision to direct a verdict is determined to have been erroneous, the parties and the judicial system are subjected to the burdens of a new trial. The preferred procedure, therefore, is to submit the issues to the jury, and then to set aside the verdict. Finding error in such a case, this court could simply direct that the verdict be reinstated. See *Santor* v. *Balnis,* 151 Conn. 434, 437, 199 A.2d 2 (1964). Obviously, a trial cut short is cheaper than one prolonged. This rationale, however, only minimally justifies the direction of a verdict after the case has been submitted to the jury, for at that stage argument has already been heard and instructions given, and, depending upon the lengthiness of jury deliberations, the trial may be in its final moments.

Nevertheless, we cannot agree that the timing of the trial court's ruling, though seemingly unwise, amounted to reversible error. The jury in this case could not reasonably have concluded that the plaintiff had met his burden of proof on the issue of causation. The plaintiff acquired no vested right in a jury determination upon submission of the case to the jury. The lack of evidence to establish causation certainly warranted a ruling in favor of the defendants before or after jury deliberations. It would hardly be sensible to reverse a correct ruling by a trial judge that did not prejudice the plaintiff in any way simply because a different procedure might have been preferable.

There is no error.

In this opinion the other justices concurred.