[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff seeks a prejudgment remedy of real estate attachment, arising out of a Complaint alleging that he was injured in a motorcycle accident which was the proximate result of reckless and wanton misconduct by the Defendants in selling him alcoholic beverages when he was visibly intoxicated at their cafe or bar.
In order for the Plaintiff to prevail in this Hearing, the Court must find:
 "that the Plaintiff has shown probable cause to to sustain the validity of his claim."
Conn. General Statutes, Section 52-278d(a).
The Supreme Court of Connecticut defined "probable cause" as:
 ". . . a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it . . . . The Plaintiff does not have to establish he will prevail, only that there is probable cause to sustain the validity of the claim."
New England Land Co., Ltd. v. DeMarkey, 213 Conn. 612, 620
(1990).
In the case of Boehm v. Kish, 201 Conn. 385 (1986), the plaintiff alleged liability against the defendant cafe owner and his bartender for wanton and reckless conduct for serving alcoholic beverages to the plaintiff while he was already in an intoxicated condition, and that such conduct resulted in injuries subsequently sustained by the plaintiff in operating CT Page 4545 his automobile. The court held on Page 389 that "the plaintiff's action was necessarily at common law." The court further held:
 "We held in Kowal" (Kowal v. Hofher, 181 Conn. 355, 357-358 (1980)) "however, that the policy considerations that justify protecting a vendor or social host from common law liability for the injurious consequences of negligent conduct in the sale or serving of alcoholic beverages do not apply with respect to wanton and reckless misconduct. Id., 360, 361."
Boehm v. Kish, 201 Conn. 385, 390 (1986).
How should "wanton and reckless misconduct" be defined?
 "Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . . While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing." The result is that `willful,' `wanton,' or `reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence or simply inattention . . . ." W. Prosser and W. Keeton, Torts (5th Ed.) 34, P 214.
Dubay v. Irish, 207 Conn. 518, 532-533 (1988).
A proximate, causal connection between the misconduct and the resulting injury is a necessary element of a cause of action in recklessness. The Court cannot determine proximate causation unless it first finds causation in fact. See Boehm v. Kish, supra, P. 390.
Therefore even if this Court were to find probable cause to believe that the actions of the Defendant in serving the CT Page 4546 Plaintiff when he was intoxicated, constituted wanton and reckless misconduct, it must go on to consider whether the facts as presented by the Plaintiff are sufficient for a finding of probable cause that the Plaintiff's injuries were caused by that misconduct.
Addressing first the issue of whether the Defendants served alcoholic beverages to the Plaintiff when he was intoxicated, in such a manner as to constitute wanton and reckless misconduct, there was considerable evidence produced that the Defendants steadily continued to sell alcoholic beverages to the Plaintiff after he was visibly intoxicated, including "one for the road" just before closing. Such conduct falls squarely within the definition of willful, wanton or reckless conduct as quoted earlier in this Memorandum in the case of Dubay v. Irish. component of wanton and reckless conduct is the degree of danger that is reasonably foreseeable. Throughout his approximately four hours at the bar, from 8:30 or 9 P.M. to 1 A.M., the Plaintiff was wearing clear plastic goggles pushed up on his head. His motorcycle was parked in front of the front door, about six feet from the door, in full view of "bouncers" stationed at the front door. He was well known at this bar. The Defendants knew or should have known that the Plaintiff was likely to be driving when he left the bar. To continue to serve him under these circumstances, involved a high degree of danger.
Immediately upon leaving, he accepted a challenge to enter into a motorcycle race, although on other occasions he had refused such challenges because he recognized their danger. However, this time he drove to the agreed-upon race site, and began the race, with both racers driving at a high rate of speed. The Plaintiff testified that the accident was caused by his failure to slow down entering a curve because he wasn't thinking clearly because of his intoxication. As a result he lost control of his motorcycle, and according to the police report (Plaintiff's Exhibit K), skidded 135 feet before the motorcycle fell to the ground, whereupon it slid another 40 feet on its side before going up over the curb, striking the guard rail at one point and coming to rest 90 feet from the first point of impact. The police report further stated that based on physical evidence at the scene, distances traveled, skid marks, and gouge marks, the cause of the accident was the Plaintiff's attempt to negotiate a curve at too high a rate of speed. The Plaintiff was found unconscious and injured, lying on the side of the road. Two people parked nearby saw his motorcycle CT Page 4547 sliding on the road; they drove over to where he was. He was taken to the hospital where his blood alcohol level was found to be .0233.
The Plaintiff has sustained his burden of providing a basis for the Court to find probable cause that there was an unbroken sequence of events that ties his injuries to the alleged wanton and reckless service of alcohol by the Defendants to him.
As to the constitutionality of Section 52-278(d) of the Conn. General Statutes, this prejudgment remedy statute meets constitutional muster. It adequately provided the Defendants with an effective opportunity to have their day in court. They had the right to present evidence and to cross-examine the Plaintiff's witnesses.
 ". . . if the defendant is afforded the opportunity, in an adversarial hearing, to contest the validity of the claims made by the plaintiff in support of an application for a prejudgment remedy, a prejudgment attachment may constitutionally be issued without a showing of exigent circumstances. Where there is no ex parte impairment of the defendant's property rights, a judicial finding of probable cause suffices to satisfy the defendant's constitutional right to due process."
Calfee v. Usman, 224 Conn. 29, 33-34 (1992).
The Calfee case just quoted from, involved a claim by the plaintiff for personal injuries and the prejudgment statutes ruled upon were 52-278c and 52-278d, just as in the instant case.
The Court finds that the Plaintiff has shown probable cause to sustain the validity of his claim, and therefore grants the Application for Prejudgment Remedy for the amount of $75,000.00.
Richard A. Walsh, J.