[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in this case claims she was injured December 9, 1995, when she fell on the wooden steps in front of property at 79, 81 and 83 Livingston Place in Bridgeport. That property was a three family house owned by the defendants, Robert and Maryann Macaluso. The plaintiff occupies the third floor apartment with two daughters and her boyfriend, Doug Ballard. Photographs depict the general appearance of the property as of the date of the accident. A front porch extends across the front of the premises. There were two doors on that porch leading to the interior of the house. The one on the right as you face the building leads to the second floor and third floor apartments. The door on the left leads to the first floor apartment.
There is one light on the porch on the ceiling in front of the door to the first floor apartment. There is a switch inside the door to the first floor apartment which activates that light. The testimony was conflicting as to a similar switch inside the door to the second and third floor apartments. The plaintiff testified there was no switch inside her hallway CT Page 9250 whereas Mrs. Arlene Peterson, the second floor tenant, said there was a switch for that light but that it did not work. No one ever complained or advised the defendants as to the absence or non-working condition of the light switch.
From the porch, there are three wooden steps down to the sidewalk. All of the photos of the porch were taken in 2001, but the witnesses generally described them as reasonably similar to how they looked in 1995. Apparently, they had been painted in between, but the paint had peeled off.
The plaintiff testified that she worked during the day of her fall on December 9, 1995, came home and had supper with her two daughters and boyfriend Doug Ballard. After supper, she and one of her daughters each carried one plastic bag of garbage down the interior stairs and out onto the front porch. Her daughter was just in back of her. As she left the porch and placed her right foot on the top step of the stairs to the right side and the garbage bag in her right hand, she slipped and fell to the sidewalk. After getting herself up, she sat on the lowest step and then moved to the third or top step which she claimed was icy. She claimed it had snowed two or three days before. After going upstairs, her boyfriend took her to St. Vincent's Hospital. She said the fall took place between 7:00 and 8:00 p.m. although a hospital report and a telephone interview with an insurance adjuster indicated she had fallen in the morning. Based on the plaintiff's, her daughter's and her boyfriend's testimonies, the court finds it to have been proven that she fell between 7:00 and 8:00 p.m.
The plaintiff's testimony did not support any structural defect to the top step of the stairs. The only cause of the accident that has any evidentiary support is the presence of ice on that step. Other evidence and pictures taken after the fact demonstrate there was a small hole in the gutter area over the top step of the porch. She claims that she was not aware of the hole in the gutter at the time of her fall but that she had seen tape on the outside of the gutter where the hole was later observed by her, and on prior occasions a month or two before, she recalled that the steps would remain wet or damp after precipitation. She did describe that some time before her fall she observed water coming over the gutter over a "screen." She could not further explain that terminology. She claims the porch light was not on and she had no way to turn it on. She described the porch area and steps as dark. She never notified the landlord prior to her fall as to any problem with the gutter leaking or the light and she did not see it leaking that night.
The plaintiff's daughter's testimony only confirmed where and when the plaintiff fell. The daughter gave no testimony as to the gutter or the CT Page 9251 stairs or ice.
The plaintiff's boyfriend, Doug Ballard, who lived full time in the plaintiff's apartment, testified that prior to the accident he had observed the hole and tape in or on the gutter over the top step of the stairs and saw it leaking. He never brought that fact to anyone's attention because he usually used the back staircase.
Arlene Peterson, a second floor tenant, testified with some reluctance. In cross-examination, she related she and/or her husband had been indirectly threatened by the plaintiff's attorney. Although of general interest, that fact has nothing to do with the court's decision. As to the hole in the gutter, she testified on both side of the issue. On direct, she said the hole was there prior to the plaintiff's fall, that it leaked water in inclement weather onto the top step of the front stairs, and it was only after the plaintiff's fall that her husband put tape over the hole. On cross, she concluded that the hole was not there on the date of the fall. Whether it was or not, she never advised the defendants of the hole in the gutter or of ice or water falling onto the top step.
The landlord, Robert Macaluso, testified that no one ever complained to him of a hole in the gutter or of the existence of ice and water on the front steps from that hole. He had owned the house since 1985 and sold it in 1997. He admitted his responsibility for inspecting, maintaining and repairing the premises including the gutters. He stated he was on the premises regularly, at times when it was raining, and never saw a hole in the gutter, any ice or water on the top step or leaking water from the gutter. He was actually on the premises that morning around 8:20 a.m. to see the plaintiff about a rent problem. At that time, Mrs. Peterson was on the front porch sweeping off what he described as "less than a dusting" of snow from the previous night. He had a conversation with her and was on the actual front step involved herein. He said there was no hole in the gutter, no leaking from the gutter to those steps and no ice or snow on any of the stairs of the porch. No one had ever mentioned a hole in the gutter, leaking from it to the porch or any wetness or ice on the porch steps.
Mr. Macaluso further described some vague problems he was having with the plaintiff which are not significant to the court's determination. They certainly do not rise to the level of providing an incentive for the plaintiff to fabricate this whole story about the fall, her injuries and to blame it on the defendants. The parties agreed that the court could read and utilize the deposition testimony of the plaintiff's expert, Richard Twomey. He did not inspect the property until February 17, 2001. His testimony and report are of little value. That basically is a summary CT Page 9252 of the evidence in the case.
Although the complaint mentions other defects not specifically listed, the only evidence of a claimed defect is that of ice on the top step that apparently formed after water leaked from a hole in the gutter above the top step of the stairs. The plaintiff's counsel concedes that he has presented no evidence as to actual notice of the defect in the gutter that caused water to fall onto the top step causing ice to form.
The issue presented is one of constructive notice, which turns on whether the condition existed for a length of time sufficient for the defendants, in the exercise of due care, to discover the defect in time to have remedied it. Gulycz v. Stop Shop Companies, Inc.,29 Conn. App. 519, 521 (1992); Marranzini v. MacDonald's, No. CV95 0052158, 1998 WL689670 (Conn.Super. September 23, 1998), 1; McCrorey v.Heilpern, 170 Conn. 220 (1976). An inference must have some definite basis in the facts and the conclusion based on it must not be the result of speculation and conjecture. Boehm v. Kish, 201 Conn. 385 (1986);Palmieri v. Macero, 146 Conn. 705 (1959).
While an abundance of evidence is not necessary to show a sufficient length of time existed for discovery of the condition, some evidence is required. Gulycz, supra, at 521; Pae v. Burger King Corporation, No. CV96 0561567, 1998 W1389260 (Conn.Super. July 2, 1998); Kelly v. Stop ShopCompanies, Inc., No. CV96 0131387, 1997 WL 120077 (Conn.Super. February 21, 1997). It is true that an owner's liability may not be based solely upon the presence of water on the property. "Owner's Liability to Invitee for Fall", 20 A.L.R. 4th 438, 448 (1983). It is also true that constructive notice must be notice of the very defect which caused theinjury and not merely notice of conditions naturally productive of the defect even though subsequently in fact producing it. Fuller v. FirstNational Supermarkets, Inc., 38 Conn. App. 299, 301 (1995). Moreover, "evidence which goes no farther than to show the presence of a slipper foreign substance does not warrant an inference of constructive notice to the defendant." Morris v. King Cole Stores, Inc., 132 Conn. 489, 494
(1946); Kelly, supra, at 1.
Based on the law of constructive notice, the court finds that the plaintiff has failed to establish by the evidence that the defendants ever had such evidence of a hole in the gutter or that it leaked onto the steps. Certainly no one ever told them about it. There was no evidence of the temperature that night upon which one could conclude that water would freeze. No one other than the plaintiff ever saw the ice. She had apparently never seen it before. She had never seen the hole before. The defendant, Robert Macaluso, was on those very steps that morning and saw no hole in the gutter, water leaking from it, or ice on the step. It did CT Page 9253 not rain or snow that day. There was no testimony that there was any water or snow on the porch, roof, or in the gutter above the stairs on December 9, 1995. There is simply insufficient evidence upon which the court could make a finding of constructive notice. For that reason, judgment will enter for the defendant.
GORMLEY, J.