******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ADELSON LUIZ DECASTRO, ADMINISTRATOR
(ESTATE OF JOSE LUIZ DECASTRO),
ET AL. *v.* ODETAH CAMPING
RESORT, INC.
(AC 38370)

DiPentima, C. J., and Keller and Bear, Js.

*Argued November 17, 2016—officially released February 7, 2017*

(Appeal from Superior Court, judicial district of
Fairfield, Kamp, J.)

*Andrew J. Pianka*, for the appellant (named

plaintiff).

*Mark R. Cramer*, for the appellee (defendant).

*Opinion*

BEAR, J. In this wrongful death action, the plaintiff, Adelson Luiz DeCastro, the administrator of the estate of Jose Luiz DeCastro (decedent),[1] appeals from the judgment rendered by the trial court in accordance with its decision granting a motion for judgment notwithstanding the verdict filed by the defendant, Odetah Camping Resort, Inc. The decedent drowned while swimming in a lake abutting the defendant's resort. On appeal, the plaintiff claims that the trial court erred in (1) applying the wrong legal standard for proximate cause; and (2) rendering judgment notwithstanding the verdict when the jury reasonably could have concluded that the defendant's negligence was a proximate cause of the plaintiff's injuries. We disagree and affirm the judgment of the court.

On April 12, 2012, the plaintiff commenced this wrongful death action against the defendant and claimed in his operative complaint that the defendant was negligent in (1) failing to provide lifeguards at its swimming area, and (2) that the defendant knew or should have known of the dangers associated with encouraging guests to swim to its two large recreational flotation devices located outside of the designated swimming area, yet failed to take reasonable steps to secure their safety in doing so. The jury returned a verdict in favor of the defendant on the first ground and in favor of the plaintiff on the second ground; the court accepted that verdict. Following the defendant's motion for judgment notwithstanding the verdict, the court granted the motion, rendering judgment for the defendant on the second ground because it found that the plaintiff had failed to provide evidence that the negligence of the defendant proximately caused the death of the decedent. This appeal followed.

In its memorandum of decision on the defendant's motion for judgment notwithstanding the verdict, the trial court reasoned that the jury could have found as follows. "On July 7, 2011, the decedent and a group of friends went to the defendant resort located in Bozrah . . . . In order to gain entrance, the decedent paid an entrance fee. The defendant is an approximately 100 acre campground that offers multiple recreational activities. In addition to facilities to accommodate overnight camping, the defendant offers sporting facilities, which include a pool as well as volleyball, tennis, and basketball courts. The defendant abuts a large, thirty-two acre freshwater lake, which includes a small beach, and offers swimming and boating activities. A portion of the lake that is adjacent to the beach has a designated swim area. The boundaries of the swim area are designated by a rope line and buoys. Just beyond the roped-off swimming area are two inflatable platforms. One was described as a platform or trampoline, and the other was described as an 'iceberg.' Both inflatable

devices were attractions to be used by the resort guests. The defendant did not provide lifeguards at the pool or lake swim area. A single sign was posted at one end of the beach area, indicating: 'No Lifeguard on Duty. Swim at Your Own Risk.' No employees of the defendant directly supervised the lake swimming area.

"On July 9, 2011, the decedent and his friend, Saulo [De] Sousa, entered the designated swimming area for the purpose of swimming out to the trampoline just beyond the buoy line. When [De] Sousa reached the rope line, he observed the decedent immediately behind him in the water. The depth of the water at this location was approximately six feet. As [De] Sousa lifted the rope line to duck under it, he observed the decedent diving forward and under the rope. When [De] Sousa reached the trampoline, he climbed on it, but did not observe the decedent. After spending a few minutes on the trampoline, [De] Sousa reentered the water and swam to the shore. After unsuccessfully attempting to locate the decedent, employees of the defendant were notified that he was missing. After a brief search, 911 emergency services were dispatched, and Bozrah firefighters and rescue personnel responded to the scene. When notified that the decedent was last seen in the designated swim area near the buoy line, Firefighter Colin Laffey entered the water and located the decedent floating unresponsive just below the surface of the water just inside the buoy line. Laffey testified that he located the decedent in an area where the depth of the water was less than six feet. The decedent was brought to shore, and [cardiopulmonary resuscitation] was administered. The decedent was then transported by ambulance to Backus Hospital, but never regained consciousness and was pronounced dead. A postmortem autopsy determined the cause of death to be asphyxia due to submersion. The postmortem examination was negative for any signs of illness, traumatic injury, or any preexisting medical condition or disease. A toxicology examination was negative for the presence of any drugs, alcohol, or medication.

"The decedent's drowning was unwitnessed despite the fact that there were numerous people in the water and on the beach. Although other members of the decedent's group . . . were on the beach adjacent to the swimming area, no one saw him in distress or struggling in the water. He was identified by his friends as a good or strong swimmer."

On April 12, 2012, the plaintiff initiated the present wrongful death action against the defendant. The plaintiff filed a request to amend, and second amended complaint, dated May 4, 2015, and the court granted the request without objection on May 5, 2015. That amended complaint reduced the plaintiff's claims to that the defendant was negligent (1) in failing to provide lifeguards at the lake swimming area, and (2) in that the

defendant knew or should have known of the dangers associated with encouraging guests to swim to its recreational flotation devices, yet failed to take reasonable steps to secure their safety in doing so. At trial, the defendant moved for a directed verdict at the close of the plaintiff's presentation of his case, arguing that the plaintiff had failed to present a prima facie case of negligence on either claim by failing to provide evidence of a duty to the decedent, or that the defendant's actions were the cause in fact or a proximate cause of the decedent's death. The court reserved judgment on the motion. After the trial concluded, the jury returned a verdict in favor of the defendant on the first claim and for the plaintiff on the second claim. The jury awarded $229,155.96 in total economic and noneconomic damages but found the decedent 49 percent liable and the defendant 51 percent liable. On May 6, 2015, the court issued an order accepting the jury's verdict.

The defendant then moved to set aside the verdict and for judgment notwithstanding the verdict on the ground that the evidence introduced at trial was insufficient to support any finding of negligence by the defendant that caused in fact or was a proximate cause of the decedent's drowning. Additionally, the defendant argued that the plaintiff failed to prove that it had any duty to require the decedent to wear a life jacket when he was swimming in the lake. On September 2, 2015, the court granted the defendant's motion for judgment notwithstanding the verdict, concluding that the plaintiff had failed to provide any evidence that the defendant's conduct caused or was a substantial factor in causing the decedent's death and, thus, the plaintiff had failed to establish that the negligent conduct of the defendant was a proximate cause of the decedent's death. This appeal followed.

I

The plaintiff claims first that the court applied the wrong legal standard to his negligence claims. Specifically, the plaintiff argues that the court erred in requiring him to prove that the negligent conduct of the defendant was *the* proximate cause of the decedent's drowning. The defendant argues that the plaintiff artificially isolates a single word in the final sentence of the court's memorandum of decision to support his claim that the court applied the wrong legal standard. We agree with the defendant.

"It is well established that [t]he . . . determination of the proper legal standard in any given case is a question of law subject to our plenary review." (Internal quotation marks omitted.) *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 183, 74 A.3d 1278 (2013). Quoting our Supreme Court, the trial court provided: "After the plaintiff establishes that the defendant did not exercise reasonable care, the plaintiff has the burden of proving that the defendant's negligence caused the plaintiff's

injuries. To do so, the plaintiff must first establish causation in fact, that is, that the injury would not have occurred but for the actor's conduct. . . . The plaintiff then must show proximate cause. . . . Proximate cause requires that the defendant's conduct [was] a substantial factor in bringing about the plaintiff's injuries and that there was an unbroken sequence of events that tied [the plaintiff's] injuries to the [defendant's conduct]. . . . Proximate cause does not require the plaintiff to remove from the realm of possibility all other potential causes of the accident . . . . Instead, the plaintiff must establish that it is more likely than not that the cause on which the plaintiff relies was in fact *a proximate cause* of the accident. . . . The more likely than not standard ensures that the causal connection . . . [is] based [on] more than conjecture or surmise." (Emphasis added; internal quotation marks omitted.) After reviewing the evidence and other applicable law, the trial court concluded: "Viewing the evidence in the light most favorable to the plaintiff, based on the evidence presented by the plaintiff, no reasonable juror could find that the negligence of the defendant caused or was a substantial factor in causing the decedent's death by drowning."

It is clear, after reading the entirety of the court's memorandum of decision, that the court set forth and applied the proper standard for proximate cause in negligence claims: *a* proximate cause of the accident.[2] See, e.g., *Mirjavadi* v. *Vakilzadeh*, supra, 310 Conn. 192. The court also clearly recognized that the plaintiff's required proof of causation included demonstrating by a fair preponderance of the evidence that the conduct, including any omissions, of the defendant caused, or was *a substantial factor* in causing, the decedent's death by drowning. See, e.g., *Stuart* v. *Freiberg*, 316 Conn. 809, 833, 116 A.3d 1195 (2015) (stating proximate causation requires courts to determine whether defendant's conduct was substantial factor in bringing about plaintiff's injuries); *Palkimas* v. *Fernandez*, 159 Conn. App. 129, 134, 122 A.3d 704 (2015) (same). The court properly recognized that the defendant's alleged negligence had to be *a*, rather than *the*, substantial factor in causing the decedent's death.

## II

The plaintiff next claims that the court erred in rendering judgment notwithstanding the verdict when the jury reasonably could have concluded that the defendant's failure to take reasonable steps to secure the decedent's safety when he swam out to either of the two recreational flotation devices, the trampoline or the iceberg,[3] was a substantial factor in causing the decedent's death. Specifically, the plaintiff argues that life jackets should have been required for anyone swimming out to those attractions, and had the decedent been wearing a life jacket, he would not have drowned.

Additionally, he argues, citing cases involving unwitnessed deaths after falling, that our courts allow an inference of causation where logical and reasonable inferences can be drawn from circumstantial evidence. The defendant counters that there are no logical and reasonable inferences that can be drawn from the facts presented at trial that are strong enough to support an inference of causation in connection with this unwitnessed and unexplained drowning.

The following principles govern our analysis of the plaintiff's claims on appeal.[4] "We have stated that directed verdicts are disfavored because [l]itigants have a constitutional right to have factual issues resolved by the jury. . . . Accordingly, [o]ur review of a trial court's [decision] to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. . . . [I]n reviewing the trial court's decision to render judgment notwithstanding the verdict, we may affirm that decision only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . The question is not whether we would have arrived at the same verdict, but whether, when viewed in the light most favorable to sustaining the verdict, the evidence supports the *jury's* determination. . . . A trial court may only grant a motion for judgment notwithstanding the verdict if the jury reasonably and legally could not have reached any other conclusion . . . and must deny such a motion where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion. . . . We review a trial court's decision on a motion for judgment notwithstanding the verdict for abuse of discretion." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *CALCO Construction & Development Co.*, 318 Conn. 847, 862–63, 124 A.3d 847 (2015).

"A cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury." *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 328, 107 A.3d 381 (2015). Causation is comprised of two components. "With respect to the first component, causation in fact, we ask whether the injury would have occurred but for the actor's conduct. . . . The second component of causation is proximate cause. . . . Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions." (Citation omitted; internal quotation marks omitted.) Id., 329. "In Connecticut, the test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries." (Internal quotation marks omitted.) *Wu* v. *Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987). "The existence of the proximate cause of an injury is determined by

looking from the injury to the negligent act complained of for the necessary causal connection." (Internal quotation marks omitted.) *Winn* v. *Posades*, 281 Conn. 50, 56–57, 913 A.2d 407 (2007). "Although the elements of a cause of action may be established on the basis of inferences drawn from circumstantial evidence . . . such inferences must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture. . . . An inference must have some definite basis in the facts." (Citations omitted; internal quotation marks omitted.) *Boehm* v. *Kish*, 201 Conn. 385, 389, 517 A.2d 624 (1986).

The record reveals the following additional testimony with respect to the decedent's death. At trial, the plaintiff presented the testimony of Gerald Dworkin, an expert in aquatic safety and rescue. Dworkin testified as to the bodily process and physical manifestations exhibited when an individual is drowning. Specifically, he testified that when an individual is drowning, "the victim will struggle for twenty to sixty seconds and during that period of time they're using up a lot more air than they're taking in and many experience what's referred to as a laryngospasm, and it's a reflex spasm of the airway when water goes down and triggers the spasm. So, as a result, they're not getting any air, they're struggling, therefore, they're using up a lot more oxygen than they're taking in. And they become what's referred to as hypoxic, it's a lack of oxygen getting into the brain. So as a result of the hypoxia the person's rendered unconscious and, unless they're wearing a life jacket, they will then typically be face down at or just below the surface of the water and, because their face is in the water, they're now in respiratory arrest. . . .

"[T]he elements of the drowning process start with the struggle, the laryngospasm occurs, a hypoxic [state] occurs, the victim is in respiratory arrest and several minutes later the victim deteriorates into cardiac arrest. That laryngospasm at some point will relax involuntarily, at which point the victim then involuntarily gasps or inhales and if the victim's face is in the water or under the water at the time then the—now they aspirate the water into their lungs and, if it's chlorinated water or polluted water or salt water, that wreaks havoc on the lining of the lungs as well, deteriorating the victim even more so."

Dworkin also testified that certain conditions in the water and at the beach, lack of equipment, lack of procedures, and other factors increased the risks of injury to the defendant's guests.[5]

Lacking from Dworkin's testimony, from any other witness' testimony, or from any other evidence, is evidence of what caused the decedent to drown. The plaintiff concedes that there is no evidence of what caused the decedent to remain submerged, and then drown, but argues that if the decedent had been wearing a life

jacket, his head would have been held above water, and he would not have drowned. He asserts that it is common knowledge that life jackets hold a person's head and face above water.

Dworkin testified that there are five different classifications of personal flotation devices, which include life jackets. The plaintiff did not present expert evidence, however, regarding the ability of a personal flotation device to prevent the drowning of the decedent; nor could he, because there was no evidence of what caused the decedent to drown from which Dworkin could frame his expert opinion. There, thus, was not evidence sufficient for the jury to determine the issue of whether the decedent would have had a materially better chance of survival if he had been wearing a life jacket, and, therefore, that the defendant's failure to provide the decedent with a life jacket was a substantial factor in causing the drowning death of the decedent.

The lack of any evidence explaining why the decedent drowned distinguishes the present case from those cited by the plaintiff, in which our courts have concluded that the circumstantial evidence presented at trial permitted a finding that causation had been proven. In each of the cases cited by the plaintiff, sufficient circumstantial evidence of relevant defects, if believed by the jury, established by a fair preponderance of the evidence that the alleged defect or defects caused the victim's fall. See *Blados* v. *Blados*, 151 Conn. 391, 393–94, 397, 198 A.2d 213 (1964); *Facey* v. *Merkle*, 146 Conn. 129, 131–32, 135, 148 A.2d 261 (1959); *Dickson* v. *Yale University*, 141 Conn. 250, 252–55, 105 A.2d 463 (1954); *White* v. *Herbst*, 128 Conn. 659, 660–61, 25 A.2d 68 (1942); *Hall* v. *Winfrey*, 27 Conn. App. 154, 155–57, 161, 604 A.2d 1334, cert. denied, 222 Conn. 903, 606 A.2d 1327 (1992). In the present case, the plaintiff argues that life jackets should have been required for anyone swimming out to the attractions, and had the decedent been wearing a life jacket, he would not have drowned. The plaintiff, however, did not, nor could he, offer any relevant or material evidence at trial that the alleged lack of the availability of a life jacket was a direct cause of the decedent's death, because there was no evidence of what caused the decedent to drown. The decedent's drowning was both unwitnessed and unexplained, even after the autopsy.

This case is more akin to *Wu* v. *Fairfield*, supra, 204 Conn. 435, which also involved an unwitnessed and unexplained drowning. In *Wu*, the plaintiff administrator of the decedent's estate alleged, inter alia, that the defendants, the town and several of its employees, were negligent in the performance of their duties. Id., 436. The jury returned a verdict for the defendants, and the trial court denied a motion to set aside the verdict as to the defendant lifeguards. Id. On the day of the accident, the lifeguards observed the decedent as a poor

swimmer and twice that day warned her to remain in the shallow area of the lake after she had ventured into the deeper, roped-off swimming area. Id., 437. The last time the lifeguards saw the decedent, she was standing just inside the shallow area in waist deep water. Id. A short time thereafter an approaching storm prompted the lifeguards to clear the swimmers from the water. Id. After the decedent did not appear on shore, the lifeguards searched the water and found her body near the base of an underwater slope beyond the shallow water buoy line but within the permitted swimming area. Id., 437–38. It had been fifteen to thirty minutes since the lifeguards last saw her. Id., 438. The plaintiff did not present any evidence other than that the decedent perished in an unwitnessed drowning. Id., 440. The court held that the plaintiff, therefore, had failed to establish proximate cause. Id., 440–41.[6]

In the present case, the decedent's drowning also was unwitnessed and unexplained, and the autopsy performed on the decedent revealed nothing more than that his cause of death was asphyxia due to submersion, i.e., drowning. The plaintiff could not offer any relevant or material evidence that the defendant's alleged failure to provide a life jacket, or the decedent's lack of a life jacket, was a cause in fact or a proximate cause of the decedent's death, because there was no evidence of what caused the decedent to drown. Accordingly, the trial court did not abuse its discretion when it granted the defendant's motion for judgment notwithstanding the verdict and rendered judgment thereon.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The original complaint named as plaintiffs Adelson Luiz DeCastro, in his capacity as the administrator of the decedent's estate, and Dulcineide DaSilva Rocha, asserting an additional claim for loss of consortium. Subsequently, the loss of consortium claim was withdrawn and, therefore, in this opinion we refer to Adelson Luiz DeCastro, in his capacity as administrator, as the plaintiff.

[2] In its memorandum of decision, as set forth previously, the court quoted the following language from *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 776–77, 83 A.3d 576 (2014): "Proximate cause requires that the defendant's conduct [was] a substantial factor in bringing about the plaintiff's injuries . . . . Instead, the plaintiff must establish that it is more likely than not that the cause on which the plaintiff relies was in fact a proximate cause of the accident." (Citations omitted; emphasis omitted; internal quotation marks omitted.) The court thus specifically referred to "a proximate cause" instead of "the proximate cause." "The general rule that a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty. . . . It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly. . . . Rather, we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly, including considering the applicable legal principles." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *de Toledo*, 61 Conn. App. 156, 161–62, 763 A.2d 28 (2000), appeal dismissed, 258 Conn. 732, 785 A.2d 192 (2001).

[3] As previously set forth, the court found that "[a] portion of the lake that is adjacent to the beach has a designated swim area. The boundaries of the swim area are designated by a rope line and buoys. Just beyond the roped-off swimming area are two inflatable platforms. One was described as a

platform or trampoline, and the other was described as an 'iceberg.' . . . [T]he decedent and his friend, Saulo [De] Sousa, entered the designated swimming area for the purpose of swimming out to the trampoline just beyond the buoy line." We thus consider, insofar as it is relevant, only the defendant's efforts to swim out to the trampoline.

[4] The court did not make any determination as to whether the defendant had a duty to require or provide life jackets to swimmers, including the decedent, or whether there was evidence sufficient to make such a determination. We assume, however, solely for the purpose of analyzing the plaintiff's argument, that the defendant had a duty to provide a life jacket for the decedent's safety, before he swam out to either of the floating attractions, and we also assume, solely for the purpose of analyzing the plaintiff's argument, that the defendant breached that duty, and we instead review whether there was sufficient evidence for the jury to conclude that the breach of such a duty was a substantial factor in causing the decedent's death.

[5] The plaintiff clarified at oral argument before this court that these increased risk factors, which included lack of depth markers, inadequate signage, and lack of rescue equipment, were meant only to illustrate risks posed that required that the defendant mandate and provide life jackets. These factors address the duty owed to the decedent, which is not before this court on appeal.

[6] In other negligence cases, our Supreme Court has concluded that the evidence was insufficient to support a plaintiff's verdict because the plaintiff failed to remove from the realm of conjecture, guesswork, or speculation the issues of fault or proximate cause. See, e.g., *Winn* v. *Posades*, supra, 281 Conn. 59–60 (plaintiff failed to establish that conduct was proximate cause when "a number of factual possibilities . . . could explain how the accident occurred"); *Boehm* v. *Kish*, supra, 201 Conn. 393 (holding plaintiff provided no basis in facts to conclude that accident caused by intoxication to prove dram shop liability); *Meade* v. *Warehouse Transport, Inc.*, 165 Conn. 553, 555–56, 338 A.2d 111 (1973) (holding that many possible proximate causes and lack of facts pointing significantly to any one of them as due to negligence of tractor trailer operator rendered plaintiffs' negligence claim too conjectural); see also *Toomey* v. *Danaher*, 161 Conn. 204, 212, 286 A.2d 293 (1971); *Chasse* v. *Albert*, 147 Conn. 680, 683, 166 A.2d 148 (1960); *Palmieri* v. *Macero*, 146 Conn. 705, 708, 155 A.2d 750 (1959). The Supreme Court, in *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 788, 83 A.3d 576 (2014), referred to the plaintiffs' failure to present evidence sufficient to prove causation in *Winn*, *Chasse*, and *Palmieri*: "In *Palmieri* and *Winn*, none of the drivers or occupants could testify about the collisions or provide any information about how they had occurred. . . . In *Chasse*, although there was an eyewitness, that eyewitness could corroborate only that a collision had occurred and did not provide additional information about negligence or causation. . . . Thus, in *Palmieri*, *Chasse*, and *Winn*, there was no evidence to causally connect the conduct of the allegedly negligent driver with the collision and subsequent damage and injuries." (Citations omitted.) This court also has similarly determined that the evidence submitted to the trier of fact was insufficient to prove proximate cause. See, e.g., *Escourse* v. *100 Taylor Avenue, LLC.*, 150 Conn. App. 819, 830–31, 92 A.3d 1025 (2014) (evaluating sufficiency of evidence for proximate cause, court held evidence insufficient to create genuine issue of material fact that defendant or one of his agents plowed snow onto sidewalk blocking passage such that plaintiff was forced to walk in street leading to her injuries in hit and run); *Schweiger* v. *Amica Mutual Ins. Co.*, 110 Conn. App. 736, 741–42, 955 A.2d 1241 (holding plaintiff failed to provide evidence that defendant's negligence proximately caused unexplained rear-end collision), cert. denied, 289 Conn. 955, 961 A.2d 421 (2008).